The **TORONTO–DOMINION BANK,**
Plaintiff,

v.

**John W. HALL, Defendant.**
No. LR–72–C–174.

United States District Court,
E. D. Arkansas, W. D.
Dec. 17, 1973.

Rosenberg, Conflict of Laws (1971) 138 n. 3.

---

William R. Wilson, Jr., Wilson & Hodge, Little Rock, Ark., Herrington & Tait, Kingston, Ontario, Canada, for plaintiff.

Robert D. Ross, Pope, Pratt, Shamburger, Buffalo & Ross, Little Rock, Ark., for defendant.

## Memorandum Opinion

HENLEY, Chief Judge.

This is an action brought by plaintiff, The Toronto-Dominion Bank, a Canadian banking institution, against John W. Hall, an individual citizen of Arkansas, on a judgment rendered in favor of the Bank and against Hall on June 2, 1970, by the Supreme Court of the Province of Ontario in the Dominion of Canada. The amount of the judgment is $31,831.-36. Federal jurisdiction, which is not questioned, is based upon 28 U.S.C.A., section 1332(a)(2).

The cause is now before the Court on the motion of plaintiff for summary judgment, which motion has been submitted on the pleadings, the motion as amended, defendant's response to the motion, documentary exhibits, defendant's affidavit, and memorandum briefs.

It appears from the record that in 1967 the defendant engaged in certain

business transactions in Canada which resulted ultimately in his executing a contract guaranteeing payment to the Bank of a number of promissory notes secured by liens on automobiles which were being used in the prosecution of the business of an automobile rental service in which defendant was interested. The notes were not paid by the makers, and the Bank brought its suit against the defendant on his contract of guaranty.

The defendant was served personally in Arkansas under an Ontario Rule of Practice similar to the Arkansas "long arm" statute, Ark.Stats.Ann., Cum. Supp., § 27–2501 et seq. The defendant retained Canadian counsel and defended the case on its merits. The Canadian court resolved the issues against the defendant and rendered the judgment on which this suit is brought.

In support of its motion the Bank urges that on principles of comity and res judicata this Court should enforce the Canadian judgment as such and should not undertake to relitigate issues that were raised or could have been raised in the Canadian litigation.

The position of the defendant is that he has a meritorious defense or defenses to the underlying claim of the Bank, and he urges that this Court should not uncritically enforce the judgment of the Canadian court. Defendant contends that no satisfactory showing has been made that a court sitting in Ontario would so enforce an Arkansas judgment, and he contends further that to enforce the Canadian judgment in this case would be contrary to the public policy of Arkansas.

Since the suit is based on a judgment rendered by a court of a foreign nation, the full faith and credit clause of the Constitution of the United States has no application here, and it does not appear that the matter is governed by any fed-eral statute or by any treaty between the United States and Canada. Thus the question must be decided on the basis of the common law, including common law rules with respect to the enforcement in the courts of this country of judgments rendered by the courts of foreign nations.

The overall question is discussed in some detail in Leflar, American Conflicts Law, section 74; it is dealt with by the proposed Uniform Foreign Money—Judgments Recognition Act, which was proposed by the Commissioners on Uniform State Laws in 1962, and by section 98 of Restatement 2d, Conflicts of Laws. The question is rather extensively annotated in 13 A.L.R.Fed. 208, following the text of the opinion in the case of Somportex v. Philadelphia Chewing Gum Corporation, 3 Cir., 1971, 453 F.2d 435, 13 A.L.R.Fed. 194.

### I.

The jurisdiction of the Court is based on diversity of citizenship, and the question at once arises as to whether the rights of the parties are governed by Arkansas State law, including the Arkansas law of conflicts of laws, under Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, or whether they are governed by "federal common law." It is observed that suits of this kind necessarily involve to some extent the relations between the United States and foreign governments and for that reason perhaps should be governed by a single uniform rule. Cf. Banco Nacional de Cuba v. Sabbatino, 1964, 376 U.S. 398, 421–427, 84 S.Ct. 923, 11 L.Ed.2d 804.

While it can be argued that the enforceability of a foreign judgment in the courts of one of the United States should be determined by reference to a general rule of federal law,[1] and while Professor Leflar suggests that such an approach to the problem might be taken,[2] it ap-

1. See Reese, "The Status in This Country of Judgments Rendered Abroad," 50 Columbia Law Review 783, 788, quoted in 13 A.L.R. Fed. at 217.

2. Leflar, op. cit., p. 173.

pears to the Court that as the law stands today, Erie v. Tompkins, supra, is applicable and that in this case the governing law is that of Arkansas. Somportex Ltd. v. Philadelphia Chewing Gum Corporation, supra; Svenska Handelsbanken v. Carlson, D.C.Mass., 1966, 258 F.Supp. 448; Leflar, op. cit., p. 172.

The question is a novel one in Arkansas, and it therefore becomes the duty of the Court to predict as best it can how the Supreme Court of Arkansas would answer the question were it presented to that Court. Clements Auto Co. v. Service Bureau Corporation, 8 Cir., 1971, 444 F.2d 169; Village of Brooten v. Cudahy Packing Co., 8 Cir., 1961, 291 F.2d 284; National Bank of Eastern Arkansas v. General Mills, Inc., 8 Cir., 1960, 283 F.2d 574.

## II.

Regardless of whether State law or federal law is to be applied in a case like this the point of departure for discussion is obviously the decision of the Supreme Court of the United States in the leading case of Hilton v. Guyot, 1895, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95. In that case suit was brought in federal court in New York on a judgment rendered against an American citizen by a French court of competent jurisdiction; the French court had jurisdiction of the person of the defendant, and the case was tried on the merits. The lower courts gave conclusive effect to the judgment of the French court, and the decision was reviewed by the Supreme Court.

The general rule laid down by the Supreme Court, which rule has never been questioned, is as follows (pp. 205–206 of 159 U.S., pp. 159–160 of 16 S.Ct.):

"When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is *prima facie* evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that, by the principles of international law, and by the comity of our own country, it should not be given full credit and effect."

A majority of the Court then went on to hold that a foreign judgment would not be given conclusive effect unless the courts of the rendering country would give the same effect to a comparable judgment of an American court. 159 U.S. at 210, 16 S.Ct. 139. And the majority held that since the French courts would not give conclusive effect to a similar American judgment, such effect could not be given to the French judgment in suit. The judgment of the lower court was reversed. A strong dissenting opinion was filed by Chief Justice Fuller, and Justices Harlan, Brewer, and Jackson joined in the dissent.

*Hilton* was decided on June 3, 1895, and on the same day the Court decided Ritchie v. McMullen, 1895, 159 U.S. 235, 16 S.Ct. 171, 40 L.Ed. 133, and gave conclusive effect to an in personam judgment rendered against an American citizen by a Canadian court sitting in Ontario. The Court said (p. 242 of 159 U.S., p. 174 of 16 S.Ct.): "By the law of England, prevailing in Canada, a judgment rendered by an American court under like circumstances would be allowed full and conclusive effect."

While the majority of the Court in *Hilton* expressly denied that its reciprocity requirement was based upon any theory of retaliation, 159 U.S. at 228, 16 S.Ct. 139, Dr. Leflar has referred to the majority holding as a "doctrine of retaliation," Leflar, op. cit., p. 171, and

has been sharply critical of it. He has this to say (Leflar, op. cit., pp. 171–172):

" . . . The doctrine has received scant approval from commentators and is not binding on state courts. It punishes a private party for an assumed fault in the law of a foreign national and can have no appreciable tendency to induce a change in the foreign nation's law. Many state courts have refused to follow the Supreme Court doctrine of retaliation, while others have sought to limit it narrowly to its own facts by applying it only when judgment in the first case was for the plaintiff, so that a later action is barred if the prior foreign suit went in favor of the defendant therein. Such a distinction whereby application of the principle of res judicata is made to depend on who won the earlier case seems utterly artificial and wholly without regard for the reasons underlying the principle. It represents merely an effort to escape bad doctrine without rejecting it flatly, as when a Delaware court avoided the rule by holding that it did not apply when the foreign judgment was against someone who was not a citizen of the United States. Today, Hilton v. Guyot is not followed even in a majority of federal courts, since cases involving its problem usually arise in situations in which the *Erie* rule compels federal courts to follow state law, so that state rejection of retaliation against foreign judgments becomes binding in federal courts."

Leflar then points out that "reciprocity" or "retaliation" is not a feature of the Uniform Foreign Money Judgments Recognition Act promulgated by the Commissioners on Uniform State Laws in 1962. Leflar, op. cit., p. 173. The position of the Restatement is that the judgment of a court of a foreign nation, otherwise valid, will be recognized in the United States so far as the immediate parties and the underlying cause of action are concerned, at least where there has been a fair trial in a contested proceeding. Restatement 2d, Conflicts of Laws, § 98 and Comments.

Reference has been made to the decision of the Court of Appeals for the Third Circuit in Somportex Ltd. v. Philadelphia Chewing Gum Corporation. That suit was filed in the Eastern District of Pennsylvania and was based on a British judgment against an American corporation. When the suit was filed originally in England, the defendant appeared specially to question the in personam jurisdiction of the English court. After an adverse resolution of the jurisdictional question the defendant refused to proceed further, and judgment went against it. In the suit commenced on the judgment in Pennsylvania the District Court applied Pennsylvania law and gave conclusive effect to the judgment, rejecting in that connection the claim of the defendant based on the reciprocity rule of Hilton v. Guyot, supra. Somportex, Ltd. v. Philadelphia Chewing Gum Corporation, E.D.Pa., 318 F.Supp. 161. The decision of the District Court was affirmed on appeal. Somportex Ltd. v. Philadelphia Chewing Gum Corporation, supra, 453 F.2d 435.[3]

■ In view of what seems to be a general lack of support of the "reciprocity requirement" or "doctrine of retaliation" of Hilton v. Guyot, supra, and particularly in view of Dr. Leflar's position in the matter,[4] the Court now holds,

---

3. The reciprocity feature of the case was discussed in some detail by the District Court, 318 F.Supp. at 167–168, and was noted by the Court of Appeals, 453 F.2d at 440, f.n. 8. The Court of Appeals said: "The doctrine has received no more than desultory acknowledgment . . . . It has been rejected by the courts of New York . . ., and by statute in California . . . ." And the Court of Appeals agreed with the District Court that there were no Pennsylvania cases "which even intimate that a finding of reciprocity is an essential precondition to their enforcing a foreign judgment."

4. In view of the eminence of Dr. Leflar in the field of conflict of laws and in view of his influence upon the development of the law of the State of Arkansas his opinions

or rather predicts, that the Supreme Court of Arkansas will not impose reciprocity as a condition to giving conclusive effect to a foreign judgment, assuming that the judgment meets the other criteria that have been mentioned.

What has just been said actually eliminates from the case the contention of the defendant that no showing has been made that the courts of Ontario would give conclusive effect to a comparable judgment of an Arkansas court. However, the Court is convinced from its consideration of materials available to it that a comparable judgment rendered by an Arkansas court in favor of an American citizen and against a citizen of Canada would be enforced by the courts of Ontario.[5]

It will be recalled in this connection that the Canadian judgment that was enforced in Ritchie v. McMullen, supra, was an Ontario judgment. In the more recent case of Flota Maritima Browning v. Motor Vessel Ciudad, D.C.Md., 1963, 218 F.Supp. 938, 942, the Court said that since "by the law of Canada a judgment rendered by an American court is allowed full and conclusive effect, comity requires that the doctrine of res judicata applicable to American judgments should be applied to the Canadian judgment in this case." Moreover, certain textual material submitted by counsel for plaintiff and related directly to Ontario would indicate that a valid, in personam American judgment will be honored in the courts of that Province.[6] And in Cherun v. Frishman, D.C.D.C., 1964, 236 F.Supp.

292, Judge Tamm enforced against an American citizen a judgment which, like the one involved here, had been entered by the Supreme Court of Ontario.

### III.

██ The Court has no difficulty in finding, and does find, that plaintiff's judgment meets the basic requirements laid down in Hilton v. Guyot, supra, and other ruling cases, including Somportex and Cherun, supra. The Supreme Court of Ontario was a court competent to render the judgment; it had jurisdiction of the cause and the parties thereto, the defendant had an opportunity to defend the case, and he defended it; the proceedings were obviously according to the course of a civilized jurisprudence, and are stated in a clear and formal record.

Hence the motion of plaintiff for summary judgment must be granted unless it appears that to enforce the Canadian judgment would seriously offend the public policy of Arkansas. Leflar, op. cit., § 87, pp. 201–202.

While this is a suit on a judgment based on a Canadian contract, rather than a suit on the underlying contract itself, the problem presented is analogous to that presented when an Arkansas court is called upon to enforce a contract valid and enforceable under one possibly applicable body of law but invalid under Arkansas law.

 It is elementary that the courts of a forum State may refuse to enforce a contract which violates a strong public

---

are entitled to great weight as a source of Arkansas law in this area. It is perhaps unnecessary to say that Dr. Robert A. Leflar is one of the leading authorities on the American law of conflict of laws. He was a professor of law for many years at the University of Arkansas at Fayetteville; he has served as Dean of the Law School of the University, and as a Distinguished Professor of Law; he is now teaching or will teach as a Professor Emeritus. Additionally, he has served as an Associate Justice of the Supreme Court of Arkansas.

5. Section 3 of Arkansas Act 101 of 1963, the Arkansas version of the Uniform Interstate and International Procedure Act, Ark.Stats.

Ann., § 27-2504, deals with determinations of foreign law. Section 3(B) provides that in determining foreign law the Arkansas court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence. And section 3(C) provides that in a jury case a determination of foreign law is to be made by the Judge and not by the jury, and that on appeal the determination is to be reviewed as a ruling on a question of law.

6. This Court claims no expertise in the field of Canadian jurisprudence and, frankly, does not know how much Canadian law differs from Province to Province.

policy of the forum even though the contract is valid where made and where it is to be performed. Arkansas has applied that rule in instances. However, Arkansas will not automatically refuse to enforce a contract simply because the contract is not valid under Arkansas law if it is valid under some other body of relevant law.

A typical case is one involving usury, the Arkansas public policy against which is extremely strong. The Constitution and statutes of Arkansas fix a maximum legal rate of interest of 10 percent per annum and stipulate that any obligation calling for the payment of interest in excess of that percentage is absolutely void both as to principal and as to interest. However, where a contract calling for interest in excess of 10 percent is valid in the State where made and in the State where the obligation is payable, it will be enforced in Arkansas even though the obligation is secured by a lien on Arkansas real estate. Cooper v. Cherokee Village Development Co., 1963, 236 Ark. 37, 364 S.W.2d 158.

A number of years ago this Court had occasion to discuss the problem in usury context in National Surety Corporation v. Inland Properties, Inc., E.D.Ark., 1968, 286 F.Supp. 173, 182–190.[7] There, as in *Cherokee Village,* supra, an Arkansas corporate borrower negotiated a loan in New York secured by a lien on Arkansas real estate. The loan called for interest substantially in excess of 10 percent per annum; the note was executed in New York and payable in New York, a State in which the defense of usury is not available to a corporation. The borrower having defaulted on the note, the creditor brought suit in this Court to enforce the obligation, and to foreclose its lien; usury was pleaded as a defense, but the plea was rejected. The Court said,

among other things (pp. 187–188 of 286 F.Supp.):

"The question of usury, then, boils down to one of conflict of laws, and in answering it this Court will apply the Arkansas law of conflict of laws. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 6 S.Ct. 1020, 85 L.Ed. 1477; McAvoy v. Texas Eastern Transmission Co., W.D.Ark., 187 F. Supp. 46; Leflar, op. cit. § 7.

"In the fairly recent case of Credit Bureau Management Co. v. Huie, E.D. Ark., 254 F.Supp. 547, 554, this Court pointed out that in passing upon the validity of contracts in a context of conflict of laws the Supreme Court of Arkansas has applied a variety of rules and that there is a lack of complete consistency in the Arkansas cases. The Court then went on to cite Dr. Leflar's article in 18 Arkansas Law Review, supra, l. c. 140, in which that able conflicts scholar takes the view that in a case involving the validity of a contract and in which the Court has a legitimate choice of law, the Supreme Court of Arkansas will ordinarily make the choice which will uphold the contract unless to do so will involve enforcing an obligation which offends a strong public policy of the State, including its public policy against usury. The Court sees no occasion to dispute Leflar's appraisal of the Arkansas law in this area.

"While the Arkansas public policy against usury is a strong one, it is not so strong that the Supreme Court of Arkansas will invariably apply Arkansas law to strike down the contract even though the contract would be enforceable if another appropriate choice of law were made. And Arkansas will not automatically apply its own law of usury to a transaction merely

---

7. In that opinion the Court dealt with two separate and distinct controversies arising in connection with the construction of the Tanglewood Apartments in the City of Little Rock. The Court's decision on the usury issue was not appealed. There was an appeal from the Court's decision on the other aspect of the case, and the Appellate Court affirmed. National Surety Corporation v. Inland Properties, Inc., 8 Cir., 1969, 416 F. 2d 457.

because the debt is secured by a mortgage on Arkansas real estate. Those principles are made clear by the decision of the Arkansas Court in Cooper v. Cherokee Village Development Co., 236 Ark. 37, 364 S.W.2d 158, a case which, like this one, involved a choice between New York law and Arkansas law."

■ In his answer the defendant alleges that the plaintiff Bank failed to apply funds in its possession for that purpose to the payment of the alleged obligation the payment of which was guaranteed by the defendant, and that the Bank although having adequate funds in its possession to discharge the obligation misapplied those funds without authority from the defendant and thereby worked a fraud upon him.

In his original brief in opposition to the motion for summary judgment counsel for the defendant argues that the authority given to the Bank under the contract instruments to deal with the security was practically unlimited and was in excess of that which would be permitted by pertinent provisions of Article 9 of the Uniform Commercial Code, which is in force in Arkansas. Ark.Stats.Ann., § 85–9–101 et seq.

It appears to be the theory of the defendant that under the contract between the car rental service in which the defendant was interested and the automobile dealer which had sold the cars to the rental service the latter was obligated to buy the cars back from the former at their depreciated value, and that this was done; that the Bank should have taken the proceeds of the "buy backs" and applied them to the loan guaranteed by the defendant, and that the Bank in fact permitted those proceeds to be deposited in the account of the rental service and that they were dissipated by defendant's business associate without defendant's knowledge or consent.

Assuming for purposes of the motion that everything alleged or stated by defendant and his counsel is true, the Court does not agree that the enforcement of this judgment would offend any strong policy of this State.

■ Enforcement of a judgment of a foreign court based on the law of the foreign jurisdiction does not offend the public policy of the forum simply because the body of foreign law upon which the judgment is based is different from the law of the forum or because the foreign law is more favorable to the judgment creditor than the law of the forum would have been had the original suit been brought at the forum. The very idea of a law of conflicts of laws presupposes differences in the laws of various jurisdictions and that different initial results may be obtained depending upon whether one body of law is applied or another.

Conceding that the rights conferred upon the Bank by the contract documents, including the contract of guaranty, were broad, and conceding that they may have been broader than could have been conferred legally upon a lender in Arkansas, the Court does not consider them to be shocking, immoral, unconscionable, or unreasonably oppressive.

In 1967 the defendant was an adult person. He was not required to engage in business in Canada or to enter into a contract of guaranty there. And when he did those things he was required to accept the law of Canada as he found it, whether it was as favorable to him as the law of Arkansas or not. The substantive rights and liabilities of the parties under the contract were governed by Canadian law, and the questions raised in the Canadian litigation were resolved against the defendant. He cannot relitigate those questions here.

Let the motion be granted, and summary judgment entered in favor of the plaintiff.