597 F.2d 1161
 HER MAJESTY the QUEEN IN RIGHT OF the PROVINCE OF BRITISH
COLUMBIA, Plaintiff- Appellant,
v.
John Raymond GILBERTSON, Leonard Rosenthal, Jack Sylvester,
Frank Jay Cobbs, Claude Marian Johns, Defendants-Appellees.
 No. 77-2185.
 United States Court of Appeals,
Ninth Circuit.
 March 23, 1979.
Rehearing Denied June 21, 1979.
 
 Donald R. Stark (argued), of Williams, Stark, Hiefield, Norville & Griffin, Portland, Or., for plaintiff-appellant.
 Andrew P. Kerr (argued), of Gilbertson, Brownstein, Sweeney & Kerr, Portland, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before GOODWIN and ANDERSON, Circuit Judges, and JAMESON,* District Judge.
 J. BLAINE ANDERSON, Circuit Judge:
 
 PROCEEDINGS BELOW:
 
 1
 The plaintiff, the Canadian Province of British Columbia, filed this diversity action against the defendants (John Raymond Gilbertson, Leonard Rosenthal, Jack Sylvester, Frank Jay Cobbs, and Claude Marian Johns) in the United States District Court for the District of Oregon. British Columbia sought recovery on a judgment for taxes which had been awarded against the defendants by a British Columbia court. The defendants made a F.R.Civ.P. 12(b) motion to dismiss the plaintiff's complaint. After a hearing before a United States magistrate, the magistrate issued a proposed "Recommendation and Order" dismissing the action. The magistrate concluded that the foreign judgment for taxes would not be recognized by the courts of Oregon. British Columbia moved for review of the magistrate's order under 28 U.S.C. § 636(b)(1). After reviewing the question, the district judge entered an order dismissing the plaintiff's case. The order of the district court incorporating the thoughtful analysis by the magistrate is printed at 433 F.Supp. 410 (D.Or.1977). British Columbia appealed the dismissal and this court has jurisdiction of that appeal pursuant to 28 U.S.C. § 1291. We agree that the plaintiff has failed to state a claim for relief under F.R.Civ.P. 12(b)(6) and affirm the dismissal.
 
 FACTS
 
 2
 The defendants are all citizens of Oregon who received income from logging operations in British Columbia. This income was apparently subject to taxation under the British Columbia Logging Tax Act. British Columbia originally assessed an amount of $210,600.00 for the logging tax against the defendants. This amount was reduced to $173,252.00 after the defendants appealed the assessment to the taxing authorities.
 
 
 3
 British Columbia then served a "Notice of Intention to Enforce Payment" on the defendants in the United States, and filed a certificate of assessment in the Vancouver Registry of the Supreme Court of British Columbia. This certificate was for $195,929.50 (a penalty and interest were included), and under the laws of British Columbia its filing gave it the same effect as a judgment of the court. British Columbia then instituted the present action in the United States. It was dismissed because the court below concluded that the Oregon courts would follow the "revenue rule." Stated simply, the revenue rule merely provides that the courts of one jurisdiction do not recognize the revenue laws of another jurisdiction.[1]
 
 QUESTION PRESENTED
 
 4
 The only issue on appeal is whether the courts of the United States would enforce a judgment rendered for taxes by the courts of a foreign government.
 
 DISCUSSION
 
 5
 In a diversity action, a federal district court applies the law of the forum state. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Not only the substantive law, but also the conflicts of law rules of the forum are applied in diversity actions. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 62 S.Ct. 1284, 86 L.Ed. 1757 (1941). Normally, this would automatically limit our analysis to the law of Oregon since it is the forum state in the present case. However, the question presented here carries foreign relations overtones which may create an inference that this should not be decided merely by reference to Oregon law.[2] Nevertheless, we do not need to decide whether federal or state law should control, since the conclusion we reach would be the same under either Oregon or federal law.[3]
 
 
 6
 Generally, judgments from a foreign country are recognized by the courts of this country when the general principles of comity are satisfied.[4] Two often-stated exceptions to comity occur when the judgment is based on either the tax (the revenue rule) or penal laws of the foreign country.[5] Before comity may be extended, generally there is a requirement of reciprocity, which is the principle that the courts of one jurisdiction will recognize a judgment from a second jurisdiction only if the courts of the second jurisdiction would recognize a judgment from the first jurisdiction's courts.[6] An analysis of both the revenue rule and reciprocity requirement supports our ultimate conclusion that British Columbia failed to state a claim upon which relief could be granted.
 
 
 7
 Lord Mansfield is generally credited as being the first to express the revenue rule. In 1775, while deciding a contract action, he said that ". . . no country ever takes notice of the revenue laws of another." Holman v. Johnson, 98 Eng.Rep. 1120, 1121 (1775). A few years later, Lord Mansfield had occasion to repeat the rule in another case where he said: "One nation does not take notice of the revenue laws of another." Planche v. Fletcher, 99 Eng.Rep. 164, 165 (1779). Although the rule may have only been dicta to these cases, since its inception it has become so well recognized that this appears to be the first time that a foreign nation has sought to enforce a tax judgment in the courts of the United States.[7]
 
 
 8
 Judge Learned Hand best expressed the purpose behind the revenue rule:
 
 
 9
 "While the origin of the exception in the case of penal liabilities does not appear in the books, a sound basis for it exists, in my judgment, which includes liabilities for taxes as well. Even in the case of ordinary municipal liabilities, a court will not recognize those arising in a foreign state, if they run counter to the 'settled public policy' of its own. Thus a scrutiny of the liability is necessarily always in reserve, and the possibility that it will be found not to accord with the policy of the domestic state. This is not a troublesome or delicate inquiry when the question arises between private persons, but it takes on quite another face when it concerns the relations between the foreign state and its own citizens or even those who may be temporarily within its borders. To pass upon the provisions for the public order of another state is, or at any rate should be, beyond the powers of a court; it involves the relations between the states themselves, with which courts are incompetent to deal, and which are intrusted to other authorities. It may commit the domestic state to a position which would seriously embarrass its neighbor. Revenue laws fall within the same reasoning; they affect a state in matters as vital to its existence as its criminal laws. No court ought to undertake an inquiry which it cannot prosecute without determining whether those laws are consonant with its own notions of what is proper."
 
 
 10
 Moore v. Mitchell, 30 F.2d 600, 604 (2d Cir. 1929) (L. Hand, J., concurring), Aff'd on other grounds, 281 U.S. 18, 50 S.Ct. 175, 74 L.Ed. 673 (1930). While this reasoning no longer prevents a state from enforcing its tax judgment in the courts of a sister state because of the full faith and credit clause,[8] this same rationale has continued validity in the international context. Additionally, if the court below was compelled to recognize the tax judgment from a foreign nation, it would have the effect of furthering the governmental interests of a foreign country, something which our courts customarily refuse to do.[9]
 
 
 11
 Although the Supreme Court has never had occasion to address the question of whether the revenue rule would prevent a foreign country from enforcing its tax judgment in the courts of the United States, the indications are strong that the Court would reach the same result as we reach in the present case. Both the majority and the dissenting opinion in Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), discussed the rule in a spirit which indicates a continued recognition of the revenue rule in the international sphere.[10]
 
 
 12
 There is no Oregon case law on point. The only inference which can be drawn from Oregon statutory law supports our conclusion. In 1977, Oregon adopted the Uniform Foreign Money Judgment Recognition Act. This provides that judgments from a foreign country for a sum of money which meet certain requirements are enforceable in the Oregon courts. However, the Act defines the judgments to which it applies as "(a)ny judgment of a foreign state granting or denying recovery to a sum of money, Other than a judgment for taxes . . . ." (emphasis added) 1977 Or. Laws, S.B. 28 § 1(2). The only conclusion which can be drawn from this specific exclusion is that the Oregon legislature continues to recognize the revenue rule.
 
 
 13
 The political branches of the United States Government have entered into two tax treaties with the Canadian Government. (See Convention and protocol between the United States of America and Canada respecting double taxation. 56 Stat. 1399 (1942); Convention and protocol between the United States of America and Canada respecting double taxation, estate taxes and succession duties. 59 Stat. 915 (1944).) These treaties are quite extensive; they address various questions arising from situations where individuals or corporations as residents, or citizens of one country, own property or do business in the other country. One section provides for the exchange of information between the two countries for the purpose of preventing international tax evasion. This is as close as the treaties come to providing for enforcement powers. Even though the political branches of the two countries could have abolished the revenue rule between themselves at the time they entered into the treaties, they did not.
 
 
 14
 British Columbia urges this court to disregard the reciprocity requirement, following Somportex Limited v. Philadelphia Chewing Gum Corp., 318 F.Supp. 161 (E.D.Pa.1970), Aff'd 453 F.2d 435 (3rd Cir. 1971), Cert. denied, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479, and Toronto-Dominion Bank v. Hall, 367 F.Supp. 1009 (E.D.Ark.1973). In view of other recent cases and legislation which have considered the reciprocity requirement, we decline to follow plaintiff's suggestion. While reciprocity may no longer be a requirement, it certainly remains a factor which may be considered in deciding whether to recognize a foreign country's judgment for taxes.
 
 
 15
 Initially, we note that not all recent cases have refused to consider reciprocity. See e. g., Kohn v. American Metal Climax, Inc., 458 F.2d 255, 303 (3d Cir. 1972) (Adams, J., dissenting), Cert. denied, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126; Waxman v. Kealoha, 296 F.Supp. 1190, 1194 (D.Haw.1969). Although the Supreme Court refused to extend reciprocity beyond judgments, the Court commented that reciprocity reduces the likelihood of injustice in particular cases. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 412, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964).
 
 
 16
 From an Oregon statute and recent Congressional action, it may be inferred that the reciprocity requirement is still important within the context of tax laws. Oregon has a statute which allows sister states to enforce their tax laws in Oregon courts, but only if a reciprocal right is extended to Oregon by the sister state. See Or.Rev.Stat. § 305.610; and Or.Rev.Stat. § 118.810 Et seq. Additionally, Congress recently passed a statute for the District of Columbia which contained the same reciprocity requirement as the Oregon statutes. District of Columbia Reciprocal Tax Collection Act, 92 Stat. 751. The House Report on the District of Columbia bill found that forty-five states had a similar reciprocity requirement. H.R.Rep.No.95-1366, 95th Cong., 2d Sess. (1978). If the reciprocity requirement is still valid to the recognition of another state's tax laws, it should apply with at least equal effect when a foreign country seeks enforcement of its own court's tax judgment in the courts of this country.[11]
 
 
 17
 Reciprocity would itself be a sufficient basis for denying British Columbia's claim. The courts of British Columbia, relying upon the revenue rule, have refused to recognize the judgment of a United States court for taxes. United States v. Harden, 1963 Canada Law Reports 366 (Sup.Ct. of Canada, 1963, Affirming Court of Appeal for British Columbia).[12]
 
 CONCLUSION
 
 18
 The revenue rule has been with us for centuries and as such has become firmly embedded in the law. There were sound reasons which supported its original adoption, and there remain sound reasons supporting its continued validity. When and if the rule is changed, it is a more proper function of the policy-making branches of our government to make such a change.
 
 
 19
 The order of the district court dismissing this action is AFFIRMED.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation
 
 
 [1]
 This rule prevents a foreign jurisdiction from either instituting a suit to recover taxes, or bringing a suit to enforce its own court's judgment for taxes. Unless otherwise indicated, for purposes of our discussion in this case, when we refer to the revenue rule it is limited to the situation presented in this case; i. e., where a foreign country brings an action in a court of this country to enforce a judgment for taxes granted by the foreign country's own courts
 
 
 [2]
 The United States has entered into two tax treaties with Canada. See Convention and protocol between the United States of America and Canada respecting double taxation. 56 Stat. 1399 (1942); Convention and protocol between the United States of America and Canada respecting double taxation, estate taxes and succession duties. 59 Stat. 915 (1944). Cf. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 424-427, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), where Court found that the scope of the act of state doctrine was to be decided by reference to federal rather than state law. But cf. Toronto-Dominion Bank v. Hall, 367 F.Supp. 1009 (E.D.Ark.1973), where the court noted that "suits of this kind necessarily involve to some extent the relations between the United States and foreign governments and for that reason perhaps should be governed by a single uniform rule," but then went on to apply Arkansas state law. 367 F.Supp. at 1011-1012
 
 
 [3]
 See John Sanderson & Co. (Wool) Pty. v. Ludlow Jute, 569 F.2d 696, 697 n.1 (1st Cir. 1978), where the same approach was taken
 
 
 [4]
 The general principles of comity were stated in Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), as follows:
 ". . . where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact."
 159 U.S. 202-203, 16 S.Ct. 158. See e. g., John Sanderson & Co. (Wool) Pty. v. Ludlow Jute, 569 F.2d 696 (1st Cir. 1978).
 
 
 [5]
 Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 413-414, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); Moore v. Mitchell, 30 F.2d 600, 603 (2d Cir. 1929) (L. Hand, J., concurring), Aff'd on other grounds, 281 U.S. 18, 50 S.Ct. 175, 74 L.Ed. 673 (1930)
 
 
 [6]
 In Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), the Court found that "the rule of reciprocity has worked itself firmly into the structure of international jurisprudence." 159 U.S. at 227, 16 S.Ct. at 168. We recognize that the reciprocity requirement has fallen into some disfavor. See e. g., Restatement, Second, Conflict of Laws, § 98, Comment e
 
 
 [7]
 The court below in this case observed that:
 "The issue is one of first impression. Apparently this is the first time in American legal history that a foreign government has sought enforcement of a tax judgment in a court of the United States. The best explanation for this seems to be that the 'well established rule' that it cannot be done has deterred all attempts."
 (citations omitted)
 Her Majesty the Queen, etc. v. Gilbertson, 433 F.Supp. 410, 411 (D.Or.1977).
 
 
 [8]
 As the Moore v. Mitchell, supra, case indicates, at one time the revenue rule applied with the same force and effect in the courts of this country, regardless of whether the foreign jurisdiction was a sister state or a foreign country. However, in Milwaukee County v. White Co., 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935) the Supreme Court held that the full faith and credit clause of the Constitution mandated that the states recognize the judgments for taxes which had been granted by the courts of other states. British Columbia argues that the rationale upon which the Milwaukee County case was based should apply to the present situation as well. Unfortunately, there is no provision similar to the full faith and credit clause in the Constitution which would require that the courts of this country extend full faith and credit to the judgments of a foreign country. See Perrin v. Perrin, 408 F.2d 107, 109 (3rd Cir. 1969)
 
 
 [9]
 Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 448, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (White, J., dissenting)
 
 
 [10]
 In response to one of the respondents' arguments, the Court made the observation that:
 "They rely on the principle enunciated in federal and state (courts) that a court need not give effect to the penal or revenue laws of foreign countries or sister states.
 (citations omitted)
 Sabbatino, 376 U.S. at 413-414, 84 S.Ct. at 932-933. In his dissent, Justice White discussed the rule in much the same manner:
 "Furthermore, our courts customarily refuse to enforce the revenue and penal laws of a foreign state, since no country has an obligation to further the governmental interests of a foreign sovereign."
 (footnote omitted)
 Sabbatino, 376 U.S. at 448, 84 S.Ct. at 951. The dissent goes on to argue that the same considerations which support the revenue rule would also support the refusal by the Court to apply the act of state doctrine. Sabbatino, 376 U.S. at 450, n.11, 84 S.Ct. 923.
 
 
 [11]
 Milwaukee County v. White Co., 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935), only decided that the full faith and credit clause required that the states recognize Judgments for taxes by other states. It left undecided whether one state must enforce the revenue laws of another state. 296 U.S. at 275, 56 S.Ct. 229. This is the question to which these various reciprocal tax collection statutes are addressed
 
 
 [12]
 To explain the purpose behind the revenue rule, the Canadian Supreme Court quoted the same passage from Judge Learned Hand's opinion in Moore v. Mitchell, supra, which was quoted earlier in this opinion. 1963 Canada Law Reports at 370-371