**SOUTH CAROLINA NATIONAL BANK, Plaintiff,**

v.

**WESTPAC BANKING CORPORATION, Defendant.**

**Civ. A. No. 3:86–1688–16.**

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 12, 1987.

Manton M. Grier, Belton T. Zeigler, Boyd Knowlton Tate & Finlay, P.A., Columbia, S.C., for plaintiff.

David W. Robinson, II, Columbia, S.C., for defendant.

**ORDER**

HENDERSON, District Judge.

This matter comes before the Court on cross motions for summary judgment. For the reasons stated below, the Court grants the defendant's motion and denies the plaintiff's motion. Accordingly, final judgment is entered in favor of the defendant.

The material facts giving rise to this action are not in dispute. On November 21, 1979, South Carolina National Bank ("SCN") issued an irrevocable letter of credit in favor of National Railroad Utilization Corp. ("NURC") for $429,000.00. The letter of credit was issued to pay Commonwealth Steel Company ("Commonwealth"), an Australian corporation, for products Commonwealth was to ship to NURC. By its terms, the letter of credit was subject to the Uniform Customs and Practices for

Documentary Credit ("UCP"). To receive payment under the letter of credit, the holder was required to present to SCN a full set of clean "on board" ocean bills of lading before January 31, 1980.

Commonwealth negotiated the letter of credit, along with bills of lading, to defendant Westpac Banking Corp. ("Westpac") (formerly "Bank of New South Wales") and Westpac presented the documents to SCN on January 30, 1980. On the same day, SCN sent Westpac a telex rejecting the demand for payment because the bills of lading allegedly failed to satisfy the UCP requirements for "on board" bills of lading.[1]

Westpac then instituted an action against Commonwealth in the Supreme Court of New South Wales, Australia, to recover its advances. SCN was subsequently joined as a defendant to that action and appeared specially to contest the Australian court's jurisdiction. When the Court ruled jurisdiction was proper, SCN, without appealing that ruling, participated in a trial on the merits. At the conclusion of the trial, the judge held the bills of lading conformed to the requirements in the letter of credit and awarded Westpac $665,226.12.

SCN appealed the judgment to the Court of Appeals of New South Wales, contesting the trial court's decision on the merits but not on the jurisdictional issue. The Court of Appeals found the bill of lading "internally inconsistent" and reversed the trial court. Westpac then appealed to the Judicial Committee of the Privy Council in London, which reversed the decision of the Australian appellate court and reinstated the trial court's judgment.

On June 26, 1986, SCN commenced the present action seeking a declaratory judgment that the Australian judgment is unenforceable in South Carolina. Westpac responded by counterclaiming for enforcement of the Australian judgment or, in the alternative, for a new judgment on the merits. This Court concludes the Australian judgment is enforceable in South Carolina and, therefore, grants summary judgment in the defendant's favor. Because the Court finds the judgment is enforceable, it need not consider the parties' arguments on the merits.

 The enforceability of judgments rendered by the courts of foreign nations is to be determined under the law of the state in which enforcement is sought. *Sangiovanni Hernandez v. Dominicana de Aviacion, C. Por. A.*, 556 F.2d 611, 614 (1st Cir.1977); *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3rd Cir.1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). The courts of South Carolina have apparently not considered the enforceability of foreign judgments,[2] but the Court assumes South Carolina would adopt the principles of comity generally applied by courts in this country to determine the effect of foreign judgments. In *Hilton v. Guyot*, 159 U.S. 113, 202–03, 16 S.Ct. 139, 158–59, 40 L.Ed. 95 (1895), the United States Supreme Court formulated the following test for recognition and enforcement of foreign judgments:

> [W]here there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the

**1.** Article 20(B) of the UCP provided:
 Loading on board a named vessel or shipment on a named vessel may be evidenced either by a Bill of Lading bearing wording indicating loading on board a named vessel or shipment on a named vessel, or by means of a notation to that effect on the Bill of Lading signed or initialled and dated by the carrier or his agent....
 The printed forms used for the bills of lading presented to SCN were "received for shipment" forms. The phrases "shipped on board" and "freight pre-paid" were typed on the forms, and the words "loaded on board" had been added

with a rubber stamp. SCN contended these additions were, under Article 20(B) of the UCP, insufficient to make the documents "on board" bills of lading.

**2.** The only South Carolina authority on the enforceability of foreign judgments of which this Court is aware is a South Carolina Attorney General's Opinion that "the Courts of this State would accept a judgment of a Court of Denmark as conclusive upon the merits of the case tried in such Court, but would reserve the right to inquire into the jurisdiction of the Court rendering judgment." 39 Op.S.C.Att'y Gen. 211 (1939).

defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.

The test enunciated in *Hilton* remains the standard applied by most American courts to determine the enforceability of foreign judgments. *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440–41 (3rd Cir.1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); *Hunt v. BP Exploration Co.*, 492 F.Supp. 885, 892–95 (N.D.Tex.1980); *Toronto–Dominion Bank v. Hall*, 367 F.Supp. 1009, 1012–13 (E.D.Ark.1973); Bishop, *United States Practice Concerning the Recognition of Foreign Judgments*, 16 Int'l Law. 425, 429–33 (1982); von Mehren, *Enforcement of Foreign Awards in the United States*, 17 Va.J.Int'l L. 401, 402–03 (1977). Following these principles, courts will generally recognize and enforce the judgments of foreign courts if (1) the foreign court had personal and subject matter jurisdiction; (2) the defendant in the foreign action had adequate notice and opportunity to be heard; (3) the judgment was not obtained by fraud; and (4) enforcement will not contravene important public policy. *Id.* at 403. Both parties to the present action agree these principles should govern this Court's determination. They disagree, however, on the result the Court should reach after applying those principles.

The plaintiff asserts the Court should find the Australian judgment unenforceable because (1) the Australian courts lacked *in personam* jurisdiction and (2) enforcement of the judgment would violate the public policy of South Carolina.

## I.

■ First, the plaintiff contends the Australian courts lacked personal jurisdiction because SCN did not have sufficient contacts with Australia, under American due process standards, to warrant exercise of jurisdiction by the Australian courts. Defendant Westpac concedes the Australian courts' jurisdiction failed to satisfy the requirements of due process, but argues the existence of minimum contacts is irrelevant because SCN voluntarily submitted to the Australian courts' jurisdiction and thereby waived its right to personal jurisdiction.

It is well established that a party can waive its right to personal jurisdiction:

[T]he requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue. These characteristics portray it for what it is—a legal right protecting the individual. The plaintiff's demonstration of certain historical facts may make clear to the court that it has personal jurisdiction over the defendant as a matter of law— *i.e.*, certain factual showings will have legal consequences—but this is not the only way in which the personal jurisdiction of the court may arise. The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not.

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982). This Court concludes that under South Carolina law, SCN has waived its right to challenge the jurisdiction of the Australian courts.

Waiver is the intentional relinquishment of a known right and may be implied from circumstances indicating an intent to waive. *Bonnette v. State*, 277 S.C. 17, 18, 282 S.E.2d 597, 598 (1981). Acts inconsistent with the continued assertion of a right, such as the failure to insist upon the right, may constitute waiver. *Id.*, 282 S.E.2d at

598. Thus, a party who objects to a court's jurisdiction, but takes action inconsistent with that objection, waives the objection and becomes subject to the court's jurisdiction. *See Security Management, Inc. v. Schoolfield Furniture Indus., Inc.*, 275 S.C. 466, 272 S.E.2d 638 (1980); *Nocher v. Nocher*, 268 S.C. 503, 234 S.E.2d 884 (1977); *Southeastern Equipment Co. v. One 1954 Autocar Diesel Tractor*, 234 S.C. 213, 107 S.E.2d 340 (1959); *H.S. Chisholm, Inc. v. Klinger*, 229 S.C. 8, 91 S.E.2d 538 (1956); *South Carolina State Highway Dept. v. Isthmian S.S. Co.*, 210 S.C. 408, 43 S.E.2d 132 (1947). In the present action, SCN's conduct as a matter of law implied a waiver of its prior objection to the Australian courts' jurisdiction.

Initially, SCN clearly asserted its jurisdictional right by contesting the trial court's jurisdiction. When that jurisdictional challenge was rejected, however, SCN took no further actions to assert its right, but, to all appearances, acquiesced in the court's decision. SCN's subsequent conduct was inconsistent with the continued assertion of its right to personal jurisdiction. SCN participated fully in the trial on the merits. It made no effort to pursue an interlocutory appeal, although it does not dispute that it could have sought leave to appeal the jurisdictional ruling.[3] Nor did SCN reassert its jurisdictional objection at any time during the trial on the merits or during the two subsequent appeals.[4] Instead SCN appeared to voluntarily submit to the Australian courts' jurisdiction throughout the litigation process.[5] It was not until the last appeal terminated in Westpac's favor that SCN decided to resurrect its jurisdictional challenge before this Court.

SCN asserts it could not waive its right to object to the constitutional sufficiency of the Australian courts' jurisdiction because until SCN commenced this action, it never had an opportunity to assert its constitutional right.

If SCN's argument were accepted, however, a court could never find that a party had waived its jurisdictional right in foreign litigation because the courts of other nations are not bound by the United States Constitution and, therefore, do not apply the American due process analysis to determine jurisdiction. It is clear, however, that litigants may in fact waive their right to personal jurisdiction by participating in proceedings in the courts of foreign nations. *See, e.g., Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435 (3rd Cir.1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972).

To support its position that there was no waiver, SCN relies on *Somportex* and on *Hunt v. BP Exploration Co.*, 492 F.Supp. 885 (N.D.Tex.1980). Neither case, however, bolsters SCN's argument.

In *Somportex*, the Third Circuit held that a default judgment by the courts of Great Britain should be enforced because the defendant in the English action, a United States corporation, had waived its right to object to the jurisdiction of the English courts and to insist the merits be determined in a court with proper personal juris-

---

**3.** The plaintiff's expert on Australian law agreed with the defendant's expert that SCN could have sought leave for an interlocutory appeal of the jurisdictional ruling. *See* Affidavit of Bruce Roland McClintock at 4. The plaintiff argues, however, any action to appeal would have been "frivolous" because leave to appeal would have been denied or, if granted, the trial court's ruling would have been upheld. This assertion, however, is merely speculative and does not alter the effect of SCN's failure to appeal.

**4.** This Court discounts the assertion by the plaintiff's expert that SCN could not have "reagitated" the jurisdictional issue at the trial on the merits or appealed the jurisdictional ruling after that trial. *See* Hendley Affidavit at 5–6.

Whether the Australian courts would have accepted, or even considered, jurisdictional arguments at that stage, the plaintiff could and should have attempted to raise the issue. Such an attempt would have rebutted Westpac's assertion of waiver.

**5.** SCN apparently agreed that the issue of whether the bills of lading conformed to the requirements of the UCP "constitute[d] the entirety of the parameters of dispute between all three parties to the action." Exhibit C of Westpac at 21. In addition, SCN did not dispute the trial judge's observation that those portions of SCN's pleadings contesting the court's jurisdiction were "not pursued." Answer, Exhibit C at 24.

diction. The defendant had initially appeared in the English action to contest jurisdiction, but withdrew from the action before the English court ruled on the jurisdictional issue. The English court subsequently entered a default judgment. The Third Circuit held the defendant's aborted jurisdictional challenge amounted to a waiver and precluded it from later contesting the default judgment on jurisdictional grounds. The holding in *Somportex* supports the position of Westpac, not SCN. Like the defendant in *Somportex*, SCN initially contested the foreign court's jurisdiction, but later abandoned its challenge. By failing to pursue the challenge once it was begun, SCN, like the defendant in *Somportex*, waived its right to personal jurisdiction.

In *Hunt*, on the other hand, the court held Hunt, the defendant in the foreign action, had not waived its jurisdictional rights by participating in a proceeding on the merits. Hunt's conduct in that case, however, was different from SCN's in the present action. Hunt appeared in an English action to contest that court's jurisdiction. After the English trial court found it had jurisdiction, he filed a notice to appeal that ruling but never pursued the appeal. Hunt took other action, however, which demonstrated a clear intent not to waive any jurisdictional right. Before process was even served in the English suit, he filed an action in a United States district court seeking an adjudication of the same issues then being litigated in the English action. He continued to pursue the federal action in the United States throughout the course of the English litigation. By maintaining this second action in an American court, Hunt made it clear he did not submit to the English court's jurisdiction or acquiesce in its judgment. In addition, at the time of the American decision in *Hunt*,

appeal of the English judgment was still pending. Unlike SCN, Hunt had not pursued two appeals on the merits without raising an objection to the foreign court's jurisdiction.

SCN also argues it could not have waived its right to personal jurisdiction because its participation in the Australian proceedings was not voluntary, but was compelled by Westpac's choice of forum. This argument is unpersuasive for two reasons. First, as the Supreme Court observed in *Insurance Corp. of Ireland*, waiver of jurisdiction need not be voluntary. 456 U.S. at 704–05, 102 S.Ct. at 2105–06.[6] Second, Westpac did not compel SCN to abandon its jurisdictional objection and thereby appear to acquiesce in the Australian courts' jurisdiction. That choice was made by SCN.

For the reasons stated above, this Court concludes SCN waived its right to personal jurisdiction and is, therefore, estopped from asserting lack of jurisdiction to avoid enforcement of the Australian judgment.

## II.

■ Next, SCN contends that even if the Australian courts had personal jurisdiction, the judgment should not be enforced because it would contravene public policy supporting the "free flow of goods and services nationally." According to SCN, the Australian courts ignored the express UCP requirement that bills of lading be in "strict compliance with all terms and conditions of the letter of credit" and relied instead on a rule of "substantial compliance."[7] SCN argues that because the strict compliance rule is indispensible to international transactions involving letters of credit, courts in this country should deny enforcement to any judgment, including the Australian award in the present action,

---

**6.** *See supra* p. 598.

**7.** The Court is not certain in what regard the bills of lading are alleged not to have complied with the letter of credit. SCN clearly states it originally rejected the bills because they failed to comply with the notation requirements of UCP art. 20(b). *See supra* note 1. This also appears to be the argument on which it now relies, *see* plaintiff's Memorandum in Support of

Summary Judgment at 27, and which it presented before the Australian trial judge, *see* Answer, Exhibit C at 21. Yet, when appearing before the Australian appellate court, SCN apparently abandoned its assertion that the bills contained inadequate notations and argued instead that the bills were internally inconsistent. *See* Answer, Exhibit E at 6.

which does not reflect application of that rule.

This Court readily acknowledges the importance of the strict compliance rule set forth in the UCP. SCN's argument, however, rests on a false premise. The Australian trial court expressly recognized and applied the strict compliance rule in reaching its decision. *See* Answer, Exhibit C at 33. Consequently, the Court sees no reason to set aside the Australian judgment as violative of public policy.

## CONCLUSION

For the reasons set forth above, the Court concludes the judgment of the Australian courts in *Westpac Banking Corp. v. South Carolina National Bank* should be recognized and enforced against South Carolina National Bank. Accordingly, the defendant's motion for summary judgment is granted and final judgment is entered in the defendant's favor in accordance with the terms of the Australian court's award.

IT IS SO ORDERED.