**READING & BATES CONSTRUCTION CO. and Reading & Bates Horizontal Drilling LTD., Appellants,**

v.

**BAKER ENERGY RESOURCES CORPORATION, Appellee.**

No. 01–95–01526–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 5, 1998.

Rehearing Overruled March 30, 1998.

Chris E. Ryman, Glen A. Nordt, Houston, Leonard Rose, Kansas City, KS, for appellants.

Richard A. Schwartz, Phillip Weigand Bechter, Houston, for appellee.

Before HEDGES, BASS * and HUTSON–DUNN,** JJ.

## OPINION

HEDGES, Justice.

We are asked to decide two issues. First, did the district court err when it denied recognition to and enforcement of a Canadian judgment on "public policy" and "reciprocity" grounds under the Uniform Foreign Country Money–Judgment Recognition Act (UFCMJRA)?[1] Second, did the district court err when it refused to give full faith and credit through the Uniform Enforcement of Foreign Judgments Act (UEFJA)[2] to a Louisiana judgment that recognized the same Canadian judgment? We reverse.

## BACKGROUND TO THIS APPEAL

### The Canadian Judgment

In 1983, appellant Reading & Bates Construction Co.,[3] and appellee, Baker Energy

---

* The Honorable Sam Bass, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

** The Honorable D. Camille Hutson–Dunn, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. Tex. Civ. Prac. & Rem.Code Ann. §§ 36.003, 36.005(b)(3), (7) (Vernon 1997).

2. Tex. Civ. Prac. & Rem.Code Ann. § 35.002 (Vernon 1997).

3. Appellants, Reading & Bates Construction Co., a Texas corporation, and Reading & Bates Horizontal Drilling Ltd., a Canadian company, will collectively be referred to as "Reading & Bates" unless otherwise indicated.

Resources Corporation (Baker Energy), both American companies, submitted competitive bids to Gaz Inter–Cite Inc., a Quebec company, to lay a natural gas pipeline across and under the St. Lawrence River. As the low bidder, Baker Energy was awarded the contract.

After Baker Energy started the work, but before the project was completed, Reading & Bates sued Gaz and Baker Energy, alleging that the processes and techniques used by Baker Energy infringed two Canadian patents held by Reading & Bates Construction Co. or its wholly-owned Canadian subsidiary, Reading & Bates Horizontal Drilling Ltd. In March 1986, the trial court (the Federal Court of Canada, Ottawa, Ontario) declared one of the Canadian patents valid and found that Baker Energy had infringed it. On July 6, 1992, the Federal Court of Canada, Ottawa, Ontario, entered a judgment reciting that "[Baker Energy] earned **profits** of $2,934,205 (Canadian) in the installation of a pipeline under the St. Lawrence River" (emphasis added), and ordered Baker Energy to pay Reading & Bates $2,934,205 (Canadian)[4] plus interest as specified (the Canadian judgment). The Canadian judgment became final when the Supreme Court of Canada denied Baker Energy's application for leave on June 1, 1995.

**The Louisiana Judgment**

In November 1992, Reading & Bates filed a petition in Louisiana to make the Canadian judgment "executory." The Louisiana Civil District Court for the Parish of Orleans entered the requested judgment on December 1, 1992 (the Louisiana judgment).

**The Texas Judgment**

On December 11, 1992, Reading & Bates filed the Canadian judgment for recognition under the UFCMJRA[5] in the 334th District Court of Harris County, Texas. Baker Energy timely filed a motion for nonrecognition of the Canadian judgment.[6] It urged two reasons why the Canadian judgment should not be recognized: (1) the Canadian judgment awarded Reading & Bates damages that violated the public policy of the United States,[7] and (2) Texas courts require reciprocity with the rendering jurisdiction, which it alleged Canada did not offer.[8]

On April 22, 1993, Reading & Bates sought to enforce the Louisiana judgment in Texas by filing it in accordance with the UEFJA.[9] Baker Energy filed its "Response in Opposition to Plaintiffs' Notice and Affidavit of Filing Foreign (Louisiana) Judgment and Motion for Nonrecognition and Nonenforceability of Louisiana Judgment." In that pleading, it complained that the Louisiana judgment was invalid, unconstitutional, and not entitled to full faith and credit; that Reading & Bates was improperly attempting to evade the hurdles precluding recognition of the Canadian judgment; and that Reading & Bates had breached their settlement agreement with Baker Energy by which Baker Energy had agreed to forego appellate review of the Louisiana judgment.

On January 6, 1994, the district court signed an order granting Baker Energy's motion for nonrecognition of the Louisiana judgment without specifying any reasons. On August 11 and 23, 1995, the district court signed orders granting Baker Energy's motion for nonrecognition of the Canadian judgment and denying recognition to and enforcement of the Canadian judgment (the Texas judgment).[10] The trial court explained the reasons for its ruling:

4. Approximately USD $2.25 million at current rates of exchange.

5. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 36.0041, 36.0042 (Vernon 1997).

6. *See* Tex. Civ. Prac. & Rem.Code Ann. § 36.0044(a) (Vernon 1997).

7. *See* Tex. Civ. Prac. & Rem.Code Ann. § 36.005(b)(3).

8. *See* Tex. Civ. Prac. & Rem.Code Ann. § 36.005(b)(7).

9. *See* Tex. Civ. Prac. & Rem.Code Ann. § 35.003 (Vernon 1997). Reading & Bates did not file a new proceeding, but sought to enforce the Louisiana judgment under the cause number assigned to the Canadian judgment recognition proceeding. Accordingly, a consolidation of both enforcement actions occurred.

10. It is not clear which of these orders is the final judgment, nor do the parties raise any complaint relating to the identity of the final judgment. Regardless of which order constitutes the final judgment, motions to modify were timely filed after both orders, thereby extending the

I believe that this lawsuit fails under the reciprocity leg of the Uniform Enforcement of Foreign Judgments Act which is a provision that was specifically put into our act by the Texas State Legislature. The reason I believe that is because based on my reading of Canadian law it appears to me that Canada will not recognize a judgment wherein the measure of damages in the American court was not recognized by it. . . .

The trial court explained that it had refused recognition of the Louisiana judgment because it regarded the request as a "back door" attempt to domesticate the Canadian judgment.

## IS THE CANADIAN JUDGMENT ENTITLED TO RECOGNITION IN TEXAS?

In point of error three, Reading & Bates asserts that the district court erred in refusing to recognize the Canadian judgment.

When recognition is not contested or a contest is overruled, a foreign country judgment is conclusive between the parties to the extent that it grants recovery or denial of a sum of money. It is enforceable in the same manner as a judgment of a sister state entitled to full faith and credit.[11] The UFCMJRA governs the recognition and enforcement of foreign country money judgments. *Don Docksteader Motors, Ltd. v. Patal Enters., Ltd.*, 794 S.W.2d 760, 760 (Tex.1990).

Texas will recognize a foreign country judgment under the UFCMJRA if four conditions are met:

(1) The judgment is final and conclusive and enforceable where rendered.

(2) An authenticated copy of the judgment is filed in the office of the clerk of a court in the county of residence (or in any other court of competent jurisdiction allowed under the Texas venue laws) of the party against whom recognition is sought.

(3) Notice of the filing of the judgment is given to the party against whom recognition is sought.

(4) There are no grounds because of which the judgment should be refused recognition under TEX. CIV. PRAC. & REM.CODE ANN. § 36.005 (Vernon 1997).

TEX. CIV. PRAC. & REM.CODE ANN. §§ 36.002, 36.004, 36.0041 (Vernon 1997).

There is no dispute that conditions one through three were met. The only issue is whether the district court erred when it found grounds to deny recognition to the Canadian judgment.

The UFCMJRA specifies seven grounds under which a foreign country judgment "need not be recognized."[12] Baker Energy asserted two of those grounds in support of its argument that the Canadian judgment should be denied recognition by the district court:

(b) A foreign country judgment need not be recognized if:

. . . .

(3) the cause of action on which the judgment is based is repugnant to the public policy of this state;

. . . .

(7) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in this state, conform to the definition of "foreign country judgment."

TEX. CIV. PRAC. & REM.CODE ANN. § 36.005(b)(3), (7) (Vernon 1997). Subsection (b)(3) is referred to as the "public policy" ground, and subsection (b)(7) is referred to as the "reciprocity" ground.

### The Parties' Arguments

Reading & Bates has framed this point of error as one of (1) sufficiency of the evidence[13] to support the orders denying recog-

---

appellate timetable; the cash deposit in lieu of bond was timely filed after either order; and both orders state that recognition is denied to the Canadian judgment.

**11.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 36.004 (Vernon 1997).

**12.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 36.005(b) (Vernon 1997).

**13.** Reading & Bates argued that Baker Energy had the burden of proving the grounds for non-recognition under TEX. CIV. PRAC. & REM.CODE ANN.

nition to the Canadian judgment, "and/or" (2) a question of law.[14]

Baker Energy responds that the issue is purely one of fact: the trial court had to decide the factual question whether Canada would recognize a similar judgment from Texas. According to Baker Energy, the parties introduced evidence to the trial court in the form of conflicting affidavits from their respective experts, both Canadian law professors; the trial court disbelieved Reading & Bates' expert's opinion and believed Baker Energy's expert. Therefore, the trial court's ruling was not an abuse of discretion because it had sufficient evidence to rule as it did. Baker Energy states that because "reciprocity" is a question of fact, the trial court did not make a determination of foreign law under TEX.R. CIV. EVID. 203, but rather a factual determination that reciprocity was not present.

**Rule 203**

Rule 203 of the Texas Rules of Civil Evidence facilitates a trial court's determination of a particular law of a foreign country. Although it is contained within the article designated, "Judicial Notice," the rule itself does not refer to judicial notice. *See Lawrenson v. Global Marine, Inc.,* 869 S.W.2d 519, 525 (Tex.App.—Texarkana 1993, writ denied). It sets forth the procedural mechanism for raising an issue concerning the law of a foreign country, for giving notice to the other parties, and for furnishing materials concerning the foreign law. It provides the substantive foundation on which a trial court determines foreign country law:

> The court, in determining the law of a foreign nation, may consider any material or source, whether or not submitted by a party or admissible under the rules of evidence, including but not limited to affidavits, testimony, briefs, and treatises. If the court considers sources other than those submitted by a party, it shall give all parties notice and a reasonable opportunity to comment on the sources and to submit further materials for review by the court. *The court, and not a jury, shall determine the laws of foreign countries. The court's determination shall be subject to review as a ruling on a question of law.*

TEX.R. CIV. EVID. 203 (emphasis added). Rule 203 derives from FED.R.CIV.P. 44.1, not from the Federal Rules of Evidence. *See* Murl A. Larkin & Cathleen C. Herasimchuk, *Texas Rules of Evidence: Rules and Commentary, Article II: Judicial Notice,* 30 HOUSTON L.REV. 1, 193, 233 (1993).

This substantive provision for determining foreign country law appears to be the only means under Texas law for determining foreign country law. While Reading & Bates and Baker Energy may not have specifically referenced rule 203 in the trial court, they complied with the notice provisions, and any failure to observe strict time limitations are waived on appeal for want of complaint. There can be no doubt that the trial court itself determined Canadian law as a question of law: "[B]ased on my reading of Canadian law it appears to me that Canada will not recognize a judgment wherein the measure of damages in the American court was not recognized by it."

■ The Texas courts of appeals that have considered rule 203 have tended to label it as a "hybrid rule" or one involving "mixed questions of law and fact."[15] To the extent these

---

§ 36.005(b); that the public policy argument under section 36.005(b)(3) is an affirmative defense for which Baker Energy had the burden of proof; and that Baker Energy's arguments questioning the interest of Reading & Bates in the Canadian judgment were legally and factually insufficient.

14. Reading & Bates claimed that the orders are contrary to law because the trial court erred (1) in its interpretation of Canadian law, which is a question of law; (2) in ruling that a Canadian court would not recognize a Texas judgment; (3) in ruling that Canada and the United States have radically different measures of damages for patent infringement; and (4) in ruling that a Cana-

dian court would disregard Canadian recognition rules and reject a United States judgment solely because of an alleged difference in the measure of damages.

15. *See, e.g., Gardner v. Best Western Int'l, Inc.,* 929 S.W.2d 474, 483 (Tex.App.—Texarkana 1996, writ denied) (in Texas, questions of foreign law are mixed questions of law and fact; rule 203 is a hybrid rule by which presentation of the law resembles presentment of evidence, but which ultimately court decides as matter of law); *Volkswagen, AG v. Valdez,* 897 S.W.2d 458, 461 (Tex.App.—Corpus Christi 1995, orig. proceeding) (rule 203 aptly characterized as a hybrid

opinions imply that the determination of foreign country law is in any way a "factual" determination, we disagree with them. The court's ruling on the content of foreign country law is a ruling on a question of law. *See, e.g., Banque Libanaise Pour Le Commerce v. Khreich,* 915 F.2d 1000, 1006 (5th Cir.1990) (federal district court's determination of foreign country law fully reviewable on appeal by federal court of appeals).[16]

### Standard of Review

Therefore, Reading & Bates properly framed the issue as a question of law. In order to determine whether the Canadian judgment could be enforced under the "reciprocity leg" of the UFCMJRA, of necessity, the trial court had to determine Canadian law, *i.e.,* whether Canada would recognize judgments rendered in Texas.[17]

■ We recognize that several courts have implied that the standard of review of a trial court's ruling on recognition of a foreign country judgment is abuse of discretion. *See Don Docksteader Motors, Ltd. v. Patal Enters., Ltd.,* 776 S.W.2d 726, 727 (Tex.App.—Corpus Christi 1989), *rev'd on other grounds,* 794 S.W.2d 760 (Tex.1990); *Banque Libanaise Pour Le Commerce,* 915 F.2d at 1004; *see also Norkan Lodge Co. v. Gillum,* 587 F.Supp. 1457, 1461 (N.D.Tex.1984); *Hunt v. BP Exploration Co. (Libya),* 580 F.Supp. 304, 307 (N.D.Tex.1984). We disagree with that suggestion and point out that a trial court has no "discretion" to improperly determine the law or misapply the law to the facts. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding).

### Analysis

The trial court did not state the grounds on which it denied recognition to the Canadian judgment. We reverse only if neither the public policy exception nor the reciprocity exception was established as a question of law.

### *The "Public Policy" Ground*

■ Under the UFCMJRA, Texas may deny recognition to a foreign country judgment if "the cause of action on which the judgment is based is repugnant to the public policy *of this state.*"[18] Baker Energy argues that using profits as the measure of damages for patent infringement violates public policy because federal law has long dictated that the only damages available are actual damages. Therefore, the trial court did not err in denying recognition of the Canadian judgment because the damages award violated public policy.

In so arguing, Baker Energy looks at United States policy, not Texas policy. Neither Reading & Bates nor Baker Energy contends that patent infringement is a matter of Texas policy. In fact, both refer to it as a matter of "United States" policy. The jurisdiction of federal courts is exclusive in civil actions arising under an act of Congress relating to patent and trademark law of the United States. 28 U.S.C.A. § 1338(a) (West 1993); *Schwarzkopf Dev. Corp. v. Ti–Coating, Inc.,* 800 F.2d 240, 243 (Fed.Cir.1986); *Purer & Co. v. Aktiebolaget Addo,* 410 F.2d 871, 879 (9th Cir.1969); *Homewood Indus., Inc. v. Caldwell,* 360 F.Supp. 1201, 1204 (N.D.Ill.1973), *aff'd,* 566 F.2d 1175 (7th Cir. 1977). An allegation of patent infringement is clearly an action arising under United States patent law. *Welch Scientific Co. v.*

---

rule; court will accept uncontroverted opinions of foreign law expert as true so long as they are reasonable and consistent with text of foreign law), *mand. granted* 909 S.W.2d 900 (Tex.1995); *but see CPS Int'l, Inc. v. Dresser Indus., Inc.,* 911 S.W.2d 18, 22 (Tex.App.—El Paso 1995, writ denied) (determination of foreign law is question of law for court; better inquiry is whether trial court reached proper legal conclusion about content of foreign law; any fact question presented by evidence of content of foreign country law was for trial court to resolve).

**16.** To the extent that the Fifth Circuit in *Banque Libanaise Pour Le Commerce* made its determination of Abu Dhabi law based on the "evidence" of an attorney's affidavit, we disagree with its analysis. We regard the affidavits of John Swan (for Baker Energy) and James Gary McLeod (for Reading & Bates) not as evidence, but as briefs on Canadian law.

**17.** *See* TEX. CIV. PRAC. & REM CODE ANN. § 36.005(b)(7).

**18.** TEX. CIV. PRAC. & REM.CODE ANN. § 36.005(b)(3)(emphasis added).

*Human Eng'g Institute, Inc.,* 416 F.2d 32, 33–34 (7th Cir.1969); *Purer & Co.,* 410 F.2d at 879.[19]

The appropriate measure of damages in a patent infringement case does not impact the public policy of Texas. We hold that the district court erred if it concluded as a matter of law that recognition of the Canadian judgment should be denied based on public policy grounds under the UFCMJRA.

### The "Reciprocity" Ground

Under the UFCMJRA, Texas may deny recognition to a foreign country judgment if "it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in this state, conform to the definition of 'foreign country judgment.'"[20]

We must first decide what is meant by "reciprocity." More specifically, we must divine what is meant by the words, "it is established that the *foreign country* in which the judgment was rendered *does not recognize judgments rendered in this state that,* but for the fact that they are rendered in this state, *conform to the definition of 'foreign country judgment.'*" (Emphasis added.)

Several federal court cases have affirmatively stated that Canada will give effect to judgments from the United States. As early as 1895, the United States Supreme Court noted that where a United States citizen had appeared through attorneys and answered a petition against him filed in an Ontario court:

> By the law of England, prevailing in Canada, a judgment rendered by an American court under like circumstances would be allowed full and conclusive effect.

*Ritchie v. McMullen,* 159 U.S. 235, 242, 16 S.Ct. 171, 174, 40 L.Ed. 133 (1895) (citations omitted).

In *Toronto–Dominion Bank v. Hall,* 367 F.Supp. 1009 (E.D.Ark.1973), a United States citizen was personally served in Arkansas with a Canadian petition pursuant to an Ontario "long arm" statute. He retained Canadian counsel, defended the case on its merits, and lost. 367 F.Supp. at 1011. When the bank sought to enforce the judgment against him in Arkansas, he argued that the United States court should not give effect to the foreign judgment, among other reasons because Canada would not enforce a similar Arkansas judgment. *Id.* The court held that Arkansas would not impose a requirement of reciprocity as a condition of recognition of the foreign judgment. It concluded, nonetheless, "that a comparable judgment rendered by an Arkansas court in favor of an American citizen and against a citizen of Canada would be enforced by the courts of Ontario." 367 F.Supp. at 1014.

In *Norkan Lodge Co. v. Gillum,* the plaintiff sought to enforce in Texas a judgment entered in the Supreme Court of the Northwest Territories, Canada. 587 F.Supp. at 1458. The defendant had received notice of the Canadian suit, obtained Canadian counsel, filed an answer, and appeared for his deposition in Canada. *Id.* at 1458–59. He did not appear at trial. *Id.* at 1458. The defendant argued in the United States court that the courts of the Northwest Territories would not recognize a similar judgment rendered by Texas courts. *Id.* at 1461. The court noted that the defendant had cited no authority for his contention that Canada would not enforce a similar judgment from Texas. The court went on to say:

> The Court can find no instance of a Texas court refusing to enforce a Canadian judgment against a party who has made a general appearance and then refused to

**19.** We recognize that federal courts do not have exclusive jurisdiction over every cause of action relating to a patent. For example, it is well settled that an action based on a contract, which involves underlying patent rights, does not "arise under" United States patent law. *See Rustevader Corp. v. Cowatch,* 842 F.Supp. 171, 173 (W.D.Pa. 1993). However, the Canadian judgment is clearly one for patent infringement damages, which is the exclusive province of the federal courts.

**20.** TEX. CIV. PRAC. & REM.CODE ANN. § 36.005(b)(7). "Foreign country judgment" means a judgment of a foreign country granting or denying a sum of money other than a judgment for: (A) taxes, a fine, or other penalty; or (B) support in a matrimonial or family matter. TEX. CIV. PRAC. & REM. CODE ANN. § 36.001(2) (Vernon 1997).

appear for trial. Neither has the Court found an instance where a Canadian court refused to enforce a Texas judgment entered under similar circumstances. Thus, the Court holds that it has not been established that Canada fails to recognize similar judgments rendered in Texas.

587 F.Supp. at 1461–62.

Consistent with *Ritchie, Toronto–Dominion Bank,* and *Norkan Lodge Co.,*[21] one commentator has stated:

> [W]hether a Canadian court will recognize a United States money judgment will depend upon rules of the common law. This is the situation even under the Canadian judgment enforcement statutes, which have not fundamentally altered the common law. Under the common-law rules, *the foreign court must have jurisdiction,* the judgment must be final, it must be for a definite or easily ascertainable sum, it must be untainted by fraud, and the proceedings must not offend Canadian notions of natural justice.
>
> . . . .
>
> *For a foreign court to possess jurisdiction in the international sense, it must have territorial jurisdiction over the defendant.*
>
> . . . .
>
> According to the rules outlined in [*Emanuel v. Symon* [1908] 1 K.B. 302 (C.A.1907)] and adhered to by Canadian courts, *a provincial court would find that the foreign*

*tribunal enjoyed territorial jurisdiction over the defendant in five circumstances: . . . (4) where he voluntarily appeared in the foreign court . . . .*

Eric D. Ram, *Reciprocal Recognition of Foreign Country Money Judgments: The Canada–United States Example,* 45 FORDHAM L.REV. 1456, 1461, 1463 (1977) (footnotes omitted) (emphasis added).

■ We hold that the language in section 36.005(b)(7) means that the foreign country (like Canada) will not enforce a Texas judgment to the same extent that it would a judgment rendered within its own borders. We believe that whether Canada (or Ontario) would recognize and enforce a (hypothetical) Texas judgment similar to the Canadian judgment before us and rendered under similar circumstances depends upon two issues: (1) did the (hypothetical) Texas court have jurisdiction over the defendant and (2) did the (hypothetical) Texas proceedings offend some Canadian notion of "natural justice."

■ Canada will enforce a foreign country's judgment if the defendant was present at the time of the action or agreed to the foreign court's exercise of jurisdiction. *Morguard Invs. Ltd. v. De Savoye,* 76 D.L.R. (4th) 256, 262, 265 (Can.1990).[22] *Morguard* explained that historically Canadian courts had recognized five instances in which a foreign country's judgment would be enforced in Canada, one of which was when the defen-

---

**21.** We acknowledge that in *Royal Bank of Canada v. Trentham Corp.,* in dicta, the court stated: "Based on its examination of Alberta case law, this Court concludes that Alberta courts would not recognize a default judgment entered by a United States court under the circumstances presented here." 491 F.Supp. 404, 411 (S.D.Tex. 1980), *vacated and remanded on other grounds,* 665 F.2d 515 (5th Cir.1981).

There are several reasons, however, why *Royal Bank of Canada* can be distinguished from *Ritchie, Toronto–Dominion Bank,* and *Norkan Lodge Co.* The first is that *Ritchie, Toronto–Dominion Bank,* and *Norkan Lodge Co.* involved appearances in Canada of the party against whom enforcement of the Canadian judgment was sought in the United States. In *Royal Bank of Canada,* there was a default judgment in Alberta and a strong suggestion that personal jurisdiction was never obtained over the defendant who later opposed enforcement of the judgment. The second is that for all the court's discussion on lack of reciprocity in *Royal Bank of Canada,* the court

ultimately held that Texas courts would adopt the modern and majority rule and ignore reciprocity as a requirement for recognition of a foreign country's judgment. 491 F.Supp. at 416. After the court's decision, the Texas Legislature adopted the UFCMJRA and specifically included the requirement of reciprocity. *Royal Bank of Canada v. Trentham Corp.,* 665 F.2d 515, 516 (5th Cir.1981). On appeal, the Fifth Circuit vacated the district court's judgment and remanded the cause with instructions to the district court to determine whether it would recognize the Alberta judgment. 665 F.2d at 519. There is no published opinion about what happened on remand.

**22.** This case concerned the recognition to be given a judgment rendered by one provincial court by another provincial court, not recognition of a foreign country judgment. Its dictum is instructive, however.

dant had voluntarily appeared in the foreign country court. 76 D.L.R. (4th) at 262. This principle was followed in *Gourmet Resources International Inc. v. Paramount Capital Corp.*, 5 C.P.C. (3d) 140 (Ont. Ct. Justice 1991), in which the court held that the Canadian defendant who took certain actions in the United States Bankruptcy Court had appeared there and subjected itself to jurisdiction there:

> It is clear to this court that the defendant herein did considerably more than argue jurisdiction, although it continuously and vigorously disputed the jurisdiction of the New York courts. The steps taken by the defendant included numerous arguments made on the merits.
>
> . . . .
>
> As I see the established case law, it is not sufficient for the defendant to argue both jurisdiction and merits and if it loses on the merits to withdraw from the case. The arguing of any of the merits of the case, in my view, has been fatal to the defendant herein. . . .

5 C.P.C. (3d) at 150–51. *Accord Ritchie*, 159 U.S. at 241, 242, 16 S.Ct. at 173, 174; *Norkan Lodge Co.*, 587 F.Supp. at 1461–62; *Toronto–Dominion Bank*, 367 F.Supp. at 1011.

On appeal, Baker Energy does not dispute that a Canadian court will recognize a foreign country judgment in which the foreign country court had personal jurisdiction over the defendant. Instead, it argues that the Canadian notion of "natural justice" is offended by this judgment. The nature of this offense is what Baker Energy deems a "long standing qualification" to the Canadian rules for the recognition of foreign judgments: that a Canadian court may not recognize a foreign country judgment where the damages awarded are excessive by Canadian standards.

Baker Energy cites *Morguard* and *Stoddard v. Accurpress Manufacturing Ltd.*, B.C.J. No. 2573, Vancouver Registry CA017775 (B.C.Ct.App., Dec. 3, 1993) (unreported) in support of its argument.

In *Stoddard*, the Canadian court identified the policy issue to be reviewed as "whether a Canadian court will enforce against a Canadian resident a foreign judgment which is so disparate in terms of the law of Canada." Slip op. at 1–2. Baker Energy contends that under *Stoddard*, Canadian courts have expressly reserved the power to police foreign judgments to avoid any offense to public policy that enforcement of a foreign judgment might entail. It also cites *Morguard* for this proposition. 76 D.L.R. (4th) at 279 ("There may also be remedies available to the recognizing court that may afford redress to the defendant in certain cases such as fraud or conflict with the law or public policy of the recognizing jurisdiction."). Based on *Morguard* and *Stoddard*, Baker Energy argues that a Canadian court will refuse to enforce a judgment of a court of the United States of America on the ground that it is contrary to public policy to do so when the amount awarded as damages is regarded as excessive under Canadian law.[23]

Neither *Morguard* nor *Stoddard* is dispositive of the issue before us. *Morguard* involved neither a foreign country judgment nor excessive damages. *Stoddard*, an unreported opinion from the British Columbia Court of Appeal, was not a decision on the merits; it merely allowed the application to extend time to apply for review. The merits never were addressed because the case apparently settled.

Baker Energy notes that the Canadian judgment awarded Reading & Bates an amount in excess of ten to twenty times the

**23.** In the district court, Baker Energy also relied on *Moses v. Shore Boat Builders Ltd.*, 106 D.L.R (4th) 654 (B.C.Ct.App.1993). In *Moses*, the court refused to enforce an Alaskan default judgment against a British Columbia ship builder which had no physical presence in Alaska and did not carry on business in Alaska. The court of appeal rested its decision on *Morguard*:

> In summary, the judgment of the Supreme Court of Canada in *Morguard, supra*, offers substantial reasons to extend the real and sub-

stantial connection test to the enforcement of foreign judgments . . . . [t]he same rule which supports the assertion and taking of jurisdiction by a foreign court must govern the recognition and enforcement of that judgment in this country.

*Moses*, 106 D.L.R. (4th) at 667.

*Moses* is not an excessive damages case. It is the Canadian equivalent of *Royal Bank of Canada. See* note 21 above.

damages available (allegedly) in an American court under the same facts. It argues that if a Texas judgment sought to be enforced in Canada had differed from the Canadian's measure of damages to the same extent that the Canadian judgment differs from the Texas damages' standard, a Canadian court would review the Texas judgment to determine if enforcement of it would be consistent with Canadian public policy. Baker Energy cites no direct authority for this assertion.

■ Based on our review of Canadian authority, we find no reason to believe that a Canadian court would automatically refuse to enforce a foreign country judgment on the sole basis that the damages were excessive compared to Canadian standards. We hold that the district court erred if it concluded as a matter of law that recognition of the Canadian judgment should be denied based on lack of reciprocity under the UFCMJRA.

We sustain point of error three.

## IS THE LOUISIANA JUDGMENT ENTITLED TO FULL FAITH AND CREDIT IN TEXAS?

In points of error one and two, Reading & Bates contends that the district court erred in refusing to recognize the Louisiana judgment. Reading & Bates relies on a basic proposition: Louisiana's recognition of the Canadian judgment converted the Canadian judgment into a Louisiana judgment. As such, it was entitled to full faith and credit in Texas once it had been duly authenticated.

■ Reading & Bates filed the Louisiana judgment in Texas in accordance with the provisions of TEX. CIV. PRAC. & REM.CODE ANN. § 35.003 (Vernon 1997), thereby establishing a prima facie case for enforcement. *Medical Administrators, Inc. v. Koger Properties, Inc.,* 668 S.W.2d 719, 721 (Tex.App.—Houston [1st Dist.] 1983, no writ); *see also Knighton v. International Bus. Machines Corp.,* 856 S.W.2d 206, 209 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (when foreign judgment appears to be valid, final, and subsisting judgment, its introduction makes prima facie case for the party seeking to enforce it). The opposing party then had the burden to establish a recognized exception to full faith and credit.

■ The Full Faith and Credit Clause of the United States Constitution requires that full faith and credit be given in each state to the public acts, records, and judicial proceedings of every other state. U.S. CONST. art. IV, § 1; *Bard v. Charles R. Myers Ins. Agency, Inc.,* 839 S.W.2d 791, 794 (Tex.1992). A valid judgment from one state is to be enforced in other states regardless of the laws or public policy of the other states. *Bard,* 839 S.W.2d at 794; *Knighton,* 856 S.W.2d at 209. Even a judgment giving full faith and credit to a sister state's judgment must itself be given full faith and credit. *See Marsh v. Millward,* 381 S.W.2d 110, 115 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.e.) (Colorado judgment giving full faith and credit to Wyoming judgment entitled to full faith and credit in Texas); *see also Titus v. Wallick,* 306 U.S. 282, 292, 59 S.Ct. 557, 562, 83 L.Ed. 653 (1939) (state may not constitutionally refuse to open its courts to suit on judgment of another state based on nature of cause of action merged into judgment).

Forty-four states, the District of Columbia, and the Virgin Islands have adopted the UEFJA, which provides "a speedy and economical method of doing that which ... is required ... by the Constitution of the United States," *i.e.,* giving full faith and credit to the judgments of other state courts. UNIF. FOREIGN JUDGMENTS ACT, prefatory note, 13 U.L.A. 150 (1986). When a sister state (foreign) judgment is filed in Texas in compliance with the UEFJA, the foreign judgment becomes enforceable as a Texas judgment. *Walnut Equip. Leasing Co. v. Wu,* 920 S.W.2d 285, 286 (Tex.1996). Similarly, the filing of a sister state judgment in Louisiana converts that foreign judgment into a Louisiana judgment. *Norvell v. Norvell,* 649 So.2d 95, 98 (La.App. [4th Cir.] ), *writ denied,* 654 So.2d 325 (La.1995).[24]

---

24. In interpreting and construing the UEFJA, as well as the UFCMJRA, the decisions of other state and federal courts are relevant. *See* TEX. GOV'T CODE ANN. § 311.028 (Vernon 1988) (uni- form act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it).

Reading & Bates has couched points of error one and two in terms of legal and factual sufficiency of the evidence. It maintains that Baker Energy failed to produce any evidence demonstrating that the Louisiana judgment was not entitled to full faith and credit and that Baker Energy's arguments [25] against the Louisiana judgment were legally and factually insufficient to support the January 6, 1994 order denying full faith and credit to the judgment. Baker Energy responds that the issue is one of law: whether the UFCMJRA can be circumvented by obtaining enforcement of a foreign country judgment in a sister state.

 Under the general principles of sister state full faith and credit analysis, Reading and Bates is correct. The following exceptions to full faith and credit are well established:

(1) when a decree is interlocutory; *Bard,* 839 S.W.2d at 794.

(2) when a decree is subject to modification under the law of the rendering state; *id.*

(3) when the rendering court lacks jurisdiction; *see, e.g., Minuteman Press Int'l v. Sparks,* 782 S.W.2d 339, 342 (Tex.App.—Fort Worth 1989, no writ).

(4) when the judgment was procured by fraud; *see, e.g., Strick Lease, Inc. v. Cutler,* 759 S.W.2d 776, 777 (Tex.App.—El Paso 1988, no writ).

(5) when limitations has expired under TEX. CIV. PRAC. & REM.CODE ANN. § 16.066 (Vernon 1986). *See, e.g., Lawrence Sys., Inc. v. Superior Feeders, Inc.,* 880 S.W.2d 203, 211 (Tex.App.—Amarillo 1994, writ denied).

These exceptions are fact inquiries, not questions of law.

 The question of law exception is set forth in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 103 (1988):

A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve an improper interference with important interests of the sister State.

This exception derives from opinions of the United States Supreme Court. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 103 reporter's note (1971) & cmt. a (1988); *see, e.g., Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 279, 100 S.Ct. 2647, 2659–60, 65 L.Ed.2d 757 (1980); *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 438, 64 S.Ct. 208, 213, 88 L.Ed. 149 (1943) ("we assume ... that the command of the Constitution and the statute is not all-embracing, and that there may be exceptional cases in which the judgment of one state may not override the laws and policy of another"); *Milwaukee County v. M.E. White Co.,* 296 U.S. 268, 273, 56 S.Ct. 229, 232, 80 L.Ed. 220 (1935); *Yarborough v. Yarborough,* 290 U.S. 202, 214–16, 54 S.Ct. 181, 186–87, 78 L.Ed. 269 (1933). In *Milwaukee County v. M.E. White Co.,* the Supreme Court declined to make "full faith and credit" an iron-clad rule:

Such exception as there may be to this all-inclusive command [full faith and credit to judgments] is one which is implied from the nature of our dual system of government, and recognizes that consistently with the full-faith and credit clause there may be limits to the extent to which the policy of one state, in many respects sovereign, may be subordinated to the policy of another. That there are exceptions has often been pointed out.

*M.E. White Co.,* 296 U.S. at 273, 56 S.Ct. at 232. *Accord Magnolia Petroleum Co.,* 320

---

**25.** Baker Energy collaterally attacked the Louisiana judgment in the trial court by arguing that the judge incorrectly signed the Louisiana judgment; that the Louisiana Enforcement of Foreign Judgments Act was unconstitutional and did not apply to foreign country judgments; and that the Canadian judgment should not have been recognized because it violated public policy. Baker Energy also argued that the Louisiana

judgment should not be enforced because it was an improper attempt to evade the hurdles under the UFCMJRA applicable to foreign country judgments; that Reading & Bates breached its settlement agreement with Baker Energy when it attempted to enforce the Louisiana judgment in Texas; and that the Louisiana judgment was not entitled to full faith and credit because it was based on another judgment.

U.S. at 438, 64 S.Ct. at 213. Our resolution of these points of error rests not on any evidentiary challenge brought by Baker Energy to defeat Reading & Bates's prima facie case. We examine, rather, the question of law raised by Baker Energy: is Texas compelled to give full faith and credit to a *sister state's judgment recognizing a foreign country judgment* without first assessing whether it would recognize and enforce the foreign country judgment under its own laws? This inquiry clearly falls within section 103: would recognition involve an improper interference with important interests of the state of Texas?

A Kansas case provides an example of the "national policy of full faith and credit" giving way to the "important interests of the sister state."[26] The Kansas Court of Appeals held that a Kansas judgment filed under the UEFJA in Missouri, thus becoming a Missouri judgment, would not be given full faith and credit in Kansas when it appeared that the sole reason for the entire exercise was to avoid a motion for relief pending in the original lawsuit. *See Tanner v. Hancock*, 5 Kan.App.2d 558, 619 P.2d 1177, 1181 (1980). The court decided that both the Kansas and Missouri versions of the UEFJA were intended to facilitate enforcement of a judgment in the state where registered, not to enhance the judgment in the original state of rendition. *Id.* 619 P.2d at 1181.

> The underlying Kansas judgment upon which the Missouri judgment was based simply cannot be ignored. A "foreign judgment" registered under the Missouri provisions shall not be considered a "foreign judgment" that can subsequently be registered in Kansas ... as such is not within the spirit or the intent of the act.

*Id.* at 1182.

▪ We echo the words of the *Tanner* court in holding that it is not within the spirit or intent of the UEFJA to compel a state to recognize and enforce a "foreign country judgment" on the sole basis that it has been recognized and made executory by a sister state's judgment. Texas, like its sister states, is *not* constitutionally required to give full faith and credit to the judgments of foreign countries. *Moncrief v. Harvey* 805 S.W.2d 20, 23 n. 6 (Tex.App.—Dallas 1991, no writ); *Royal Bank of Canada v. Trentham Corp.,* 491 F.Supp. 404, 406 (S.D.Tex.1980), *vacated and remanded on other grounds,* 665 F.2d 515 (5th Cir.1981). Before a party can enforce a judgment from a foreign country in a United States court, the moving party must have the foreign judgment *recognized by the state in which it is seeking to enforce the judgment. See Matusevitch v. Telnikoff,* 877 F.Supp. 1, 2 (D.D.C.1995); *see also Hennessy v. Marshall,* 682 S.W.2d 340, 345 (Tex.App.— Dallas 1984, orig. proceeding) (while foreign country judgment is enforceable under UEFJA, it must first be recognized). We have found no cases, and have been cited to none, **requiring** that full faith and credit be given to a sister state's judgment when the underlying judgment was one of a foreign country.

▪ Nor should such a requirement exist. Giving full faith and credit to the judgment of a sister state is vastly different than according it to a foreign country judgment. Sister state judgments are entitled to full faith and credit, subject to the limited number of objections described above. A sister state judgment filed under the UEFJA becomes a final, appealable judgment 30 days after it is filed, if no postjudgment motion is filed, or when the functional equivalent of a timely filed motion to modify or motion for new trial is overruled, expressly or by operation of law. *Walnut Equip. Leasing Co.,* 920 S.W.2d at 286; Tex. Civ. Prac. & Rem.Code Ann. § 35.003(b), (c) (Vernon 1997). A filed sister state judgment makes a prima facie case for the party seeking to enforce it and the burden is on the resisting party to prove the sister state judgment is not valid or final. *Mitchim v. Mitchim,* 518 S.W.2d 362, 364 (Tex.1975). Failure to assert objections in a timely filed postjudgment motion and to obtain a ruling before the postjudgment motion is overruled expressly or by operation of law[27] will result in the filed sister state

---

**26.** While this case does not rely on section 103, we find its common-law analysis instructive.

**27.** *See* Tex.R. Civ. P. 329b(c) (in the event an original or amended motion for new trial or a motion to modify, correct, or reform a judgment

judgment being enforced, subject, of course, to any timely filed appeal. *See Walnut Equip. Leasing Co.,* 920 S.W.2d at 286; *Bahr v. Kohr,* 928 S.W.2d 98, 100 (Tex.App.—San Antonio 1996, writ denied).

On the other hand, states are not required to give full faith and credit to foreign country judgments. *Moncrief,* 805 S.W.2d at 23 n. 6. Those judgments are subject to a number of statutory objections in addition to the objections applicable to sister state judgments. TEX. CIV. PRAC. & REM.CODE ANN. § 36.005 (Vernon 1997). Once grounds for nonrecognition have been timely asserted, the foreign country judgment will not be recognized or enforced until those objections have been expressly overruled by the trial court. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 36.004, 36.0044 (Vernon 1997).

We decline to recognize the Louisiana judgment because, paraphrasing the district court judge, we refuse to allow Baker Energy to enforce its Canadian judgment "through the back door." There are legitimate reasons for our position. While the recognition of a sister state judgment is practically automatic (but for the limited exceptions described above), the recognition of foreign country judgments involves looking behind the judgment to evaluate both the law upon which it is based (here, the public policy inquiry) and the jurisdictional environment in which it was rendered (here, the reciprocity inquiry). We reserve the right of Texas courts to evaluate foreign country judgments accordingly. To recognize the Louisiana judgment is tantamount to ceding that right to our sister state. We will not permit a party to clothe a foreign country judgment in the garment of a sister state's judgment and thereby evade the our own recognition process.

We overrule points of error one and two.

Because we have sustained point of error three, we reverse the judgment of the trial court denying recognition to and enforcement of the Canadian judgment and remand

the cause for proceedings consistent with this opinion.

---

is not determined by written order signed within 75 days after the judgment was signed, it shall be

considered overruled by operation of law on expiration of that period).