Opinion issued June 10, 2010.

 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00648-CV

———————————

Flor de Maria Navarro Sanchez, Appellant

V.

Jose
Fernandez Galan Palau, Appellee



 



 

On Appeal from the 270th District Court 

Harris County, Texas



Trial Court Case No. 2008-26928

 



 

O P I N I O N

          Appellant, Flor de Maria
Navarro Sanchez (Navarro), appeals the trial court’s domestication of a 2008
Mexican divorce judgment, filed by appellee, Jose Fernandez Galan Palau (Galan).
 In two issues, Navarro contends that:
(1) the trial court erred in failing to vacate the Mexican divorce judgment because
it was domesticated after the parties were divorced in Travis County, Texas;
and (2) the Mexican divorce judgment was not subject to domestication pursuant
to the Uniform Foreign Country Money-Judgment Recognition Act.[1]

          We vacate
and dismiss.

Background

          Navarro
and Galan were married in San Luis Potosi, Mexico, on October 23, 1950.  When they married, both parties agreed that their
owned and acquired property would remain separate.  On December 11, 2003, Navarro filed for
divorce in Mexico, claiming that Galan was in an adulterous relationship and
was no longer supporting Navarro.  Navarro
requested thirty percent of Galan’s assets in her petition for divorce.  On February 28, 2006, Navarro’s request for
divorce was denied by the Mexican court, due to unproven facts. 

          After
being denied a divorce in Mexico, Navarro relocated to Austin, Texas, and filed
for divorce in the 353rd Judicial District Court of Travis County, Texas, on
May 4, 2006.[2]  Her grounds for divorce were insupportability
due to discord or conflict of personalities, adultery on the part of Galan, and
cruel treatment by Galan toward her.  Navarro
again requested a division of the property acquired by Galan during their
marriage.  Galan was personally served in
Travis County, Texas, with the Original Petition for Divorce on May 4, 2006.  Galan made a special appearance to the Travis
County court on May 15, 2006, and the court dismissed the divorce petition for
lack of personal jurisdiction over Galan on June 27, 2006.  Navarro then filed a motion for new trial with
the Travis County court, asserting that Galan was subject to personal jurisdiction
because he had been served with process while present in Texas. The motion for
new trial was granted on August 30, 2006.

          Parallel
to the proceedings in Travis County, on May 23, 2006, Galan filed for divorce
in San Luis Potosi, Mexico, on the ground that he and Navarro had been
separated for more than two years.  The
summons for divorce was delivered to Navarro on June 22, 2006, a few days
before the Travis County court dismissed her divorce petition for lack of
jurisdiction over Galan.  On May 1, 2007,
Galan filed an Affidavit of Filing Foreign Judgment Pursuant to the Uniform
Enforcement of Foreign Judgments Act in the 126th Judicial District Court of
Travis County, Texas, with regard to the 2006 denial of the divorce Navarro had
sought in Mexico.  On July 13, 2007, the
Travis County court held that the Mexican judgment was entitled to full force
and effect, but it was not res judicata as to the Travis County suit because the
Travis County suit was based on grounds not available under Mexican law or facts.

          The Travis
County divorce case was set for trial on October 22, 2007.  On that same date, Galan filed a notice of
removal to federal court, stating that the Texas court did not have personal
jurisdiction over him and that the 2006 Mexican judgment barred the Texas
proceeding.  The federal court found that
Galan acted in bad faith and that he removed the case simply to delay the
Travis County court proceedings and to help the Mexican court proceedings
finish first, as he expected a result in his favor from that court.  The case was remanded back to state court.

          The
divorce case in Travis County, Texas, was heard on November 5 and 6, 2007.  Both Navarro and Galan appeared in person and
through their attorneys.  The court
granted Navarro a divorce and divided the marital property between them.[3]  Regarding the date of the judgment, the
decree states, “This divorce [was] judicially PRONOUNCED AND RENDERED . . . on
November 6, 2007, and further noted on the Court’s docket sheet on the same
date but [was] SIGNED on the 16 [sic]
day of November, 2007.”[4]  Navarro and her attorney signed the order as
approved as to form only—Galan and
his attorney did not.  In November 2007,
UBS Financial Services, Inc. (“UBS”) filed an interpleader concerning a couple
of accounts over which Navarro and Galan were both claiming a right.[5]  At a hearing on March 31, 2008, Navarro and
Galan both represented to the court that they wanted to settle the UBS matter “to
allow the divorce decree to become final” so they could obtain a ruling from
the appellate court.  The UBS matter was
resolved at the hearing to the satisfaction of all parties and the trial
court’s order was approved by both Navarro’s and Galan’s attorneys on April 1,
2008. 

On April 28, 2008, Bank of America
intervened in the Travis County divorce case.[6]  On May 13, 2008, the Travis County court
granted Bank of America’s interpleader.[7]  Galan requested that the Travis County court issue
findings of fact and conclusions of law.  In its First Amended Findings of Fact and Conclusions
of Law, dated May 7, 2008, the Travis County court found that the 2006 Mexican
judgment denying Navarro’s request for divorce did not award any property or
characterize any of the property as separate or community.[8]  The Travis County court concluded that the
Mexican divorce case was not res judicata as to any issue in the Travis County
divorce case.[9]  Additionally, the Travis County court found
that it had jurisdiction over both parties and the subject matter of the suit. [10] 

          Around
the same time that Bank of America intervened in Travis County, the Mexican
court granted Galan’s request for divorce on April 29, 2008.  In response to Navarro’s argument that the
Travis County divorce case prevailed, the Mexican court responded that Travis
County never had jurisdiction over Galan.  The Mexican decree states, “[T]he plaintiff
[Galan], at all times, maintained that the said [Travis County] Court did not
have jurisdiction, and if he responded to the claim filed against him, . . . it
was in a preventive manner.”  The court
further explained that, “according to whatever might be decided in that aspect
by the Court of the State of Texas, U.S.A., it can be seen in the foregoing
that the plaintiff has not expressly submitted to the jurisdiction of the said
Court.”  The court did not order any
division of property and, since no culpability was found in the case, it did
not assign any payment of cost and expenses. 

On April 30, 2008, the day after
the 2008 Mexican court entered the decree, Galan filed it for domestication with
the 270th Judicial District Court of Harris County, Texas, pursuant to the “Uniform
Enforcement of Foreign Judgments Act.”[11]  The full decree was
filed in Spanish; only the last page of the decree was translated to English
for filing.  The notice of filing was
mailed to Navarro at her address in Travis County, Texas, on April 30, 2008.

          On
May 8, 2008, Navarro filed a motion for new trial in the Harris County court, asserting
three grounds for relief.  First, she
pointed out that the decree was not fully translated from Spanish to English.  Second, she included a copy of the Travis
County original petition and decree and asked the Harris County court to find
that the 2008 Mexican divorce decree was of no effect.  Third, Navarro argued that the enforcement of
foreign country judgments is limited to money judgments as provided in Chapter
36 of the Texas Civil Practice and Remedies Code, also known as the Uniform
Foreign Country Money-Judgments Recognition Act (UFCMJRA).  See Tex. Civ.
Prac. & Rem. Code Ann. §§
36.001–36.008
(Vernon 2008).  On May 12, 2008, Galan supplemented the
filing of the Mexican divorce decree, pursuant to the UFCMJRA. 

          On
May 23, 2008, Navarro filed a “Motion to Transfer Venue, or Alternatively
Motion to Vacate Judgment, or Alternatively, Motion to Dismiss or,
Alternatively First Amended Motion for New Trial” in the Harris County court.  Navarro claimed that Harris County was not a
proper venue because neither party had ever resided there and that the UFCMJRA
required the judgment to be domesticated in the county of residence of the party
against whom recognition was being sought.  Navarro further argued that the Travis County
divorce action was filed before Galan’s Mexican divorce action and that the
Travis County divorce decree was finalized before the 2008 Mexican judgment.  Navarro again argued that the UFCMJRA only
applies to money judgments. 

          On
May 28, 2008, Galan responded to Navarro’s motions, stating that the UFCMJRA found
in Chapter 36 of the Civil Practice and Remedies Code was applicable to the
Mexican divorce decree, that Harris County was a proper venue, and that the
Travis County judgment was not finalized before the Mexican judgment.  On August 20, 2008, after various other
filings, the Harris County court denied all of Navarro’s motions and
domesticated Galan’s Mexican divorce judgment.[12]  Navarro filed a notice of appeal on July 23,
2008, appealing the Harris County court’s domestication of the 2008 Mexican divorce
decree. 

Uniform Foreign Country Money-Judgment Recognition Act

          In her second issue, Navarro
argues that the Mexican divorce judgment was not subject to domestication
pursuant to the UFCMJRA.  See Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001–36.008.

A.      Standard of Review

          This Court has found that the issue
of the enforcement of a foreign country judgment is properly framed as a
question of law.  Reading & Bates Constr. Co. v. Baker Energy Res. Corp., 976
S.W.2d 702, 708 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).  Thus, we review de novo a trial court’s ruling
on recognition of a foreign country judgment.  Courage
Co. v. Chemshare Corp., 93 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.]
2002, no pet.) (citing Reading &
Bates Constr. Co., 976 S.W.2d at 708).[13]

Additionally, “[s]tatutory construction is a legal
question, which is reviewed de novo to ascertain and give effect to the
Legislature’s intent.”  HCBeck, Ltd. v. Rice, 284 S.W.3d 349,
352 (Tex. 2009).  When reviewing a
statute, we first look at the plain and common meaning of the
statute’s words.  Id.

B.      Analysis

          Navarro contends that the Harris
County trial court erred in domesticating the 2008 Mexican divorce judgment
under the UFCMJRA because that statute does not apply to divorce judgments from
foreign countries.  Navarro further
argues that the 2008 Mexican divorce judgment does not contain any provision that
grants or denies a sum of money. [14]  

A judgment creditor may seek recognition of a foreign country
judgment in Texas by filing “a final, authenticated copy of the foreign
judgment in the judgment debtor’s county of residence (‘the Texas
filing’).”  Hernandez v. Seventh Day Adventist Corp., Ltd., 54 S.W.3d 335, 336
(Tex. App—San
Antonio 2001, no pet.) (citing Tex. Civ.
Prac. & Rem. Code Ann. §§ 36.0041–42).  The judgment debtor must also “serve the
judgment debtor with notice of the Texas filing.”  Id.  “The Texas filing symbolizes both a
plaintiff’s original petition and a final judgment: the filing initiates the
recognition proceeding, but also instantly creates an enforceable Texas
judgment.”  Id. (citing Dear v. Russo,
973 S.W.2d 445, 446 (Tex. App.—Dallas 1998, no pet.)).

The UFCMJRA applies to a foreign country judgment.  Tex.
Civ. Prac. & Rem. Code Ann. § 36.002.  A foreign country judgment is “a judgment of
a foreign country granting or denying a sum of money other than a judgment for
. . . support in a matrimonial or family matter.”  Id. §
36.001(2).  Recognition of a foreign country judgment is
conclusive between the parties “to the extent that it grants recovery or denial
of a sum of money.”  Id. § 36.004; Reading &
Bates Constr. Co., 976 S.W.2d at 706; see
Dart v. Balaam, 953 S.W.2d 478, 479–80
(Tex. App.—Fort Worth 1997, no writ) (describing judgment recognized under UFCMJRA
as “[a] foreign country judgment assessing money damages.”). 

          The UFCMJRA expressly states that it
applies only to “a judgment of a foreign country granting or denying a sum of
money,” and it further excludes “a judgment for support in a matrimonial or
family matter.”  See Tex. Civ. Prac. &
Rem. Code Ann. § 36.001(2).  The UFCMJRA’s
express terms clearly provide that it applies only to money judgments.  See id.; Brosseau v. Ranzau, 81 S.W.3d 381, 388
(Tex. App.—Beaumont 2002, pet. denied) (holding, when appellant was not asking
for enforcement of portion of foreign country judgment that pertained to money,
that the “UFCMJRA pertains to a money judgment” and that appellant’s case did
not fall within parameters of Act).[15]
 Thus, we conclude that the plain
language of the UFCMJRA does not authorize the trial court to recognize the
2008 Mexican divorce decree.  

          We sustain Navarro’s second issue. 

          Because Navarro’s second issue is
dispositive of the case, we decline to discuss Navarro’s first issue arguing
that the divorce granted in Travis County preceded the 2008 divorce granted in
Mexico and thus precluded the Harris County court from domesticating the 2008
Mexican judgment.

 

 

 

 

 

 

 

Conclusion

          We vacate the Harris County court’s
judgment and dismiss Galan’s petition to domesticate the 2008 Mexican divorce
decree.  Any outstanding motions are
dismissed as moot.

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.











[1]               See Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001–36.008
(Vernon 2008).

 





[2]
              While
Navarro established residency in Travis County, Texas, she retained her Mexican
citizenship.





[3]
              Navarro
was awarded 62.5% of the community estate and Galan was awarded 37.5% of the
community estate. 

 





[4]               While the judgment
purports to be final on this date, there is dispute between the parties as to
when it actually became final, due to interpleaders that were filed. Both
parties agreed on the record in Travis County court that they intended to
finalize the judgment on March 31, 2008. 

 





[5]
              The
actual day the interpleader was filed is not specified in the record.

 





[6]           The
date of the intervention is provided by Galan in a pleading filed with the
Harris County court. The actual pleading filed by Bank of America is not in the
record provided.

 





[7]           The
order of the Travis County court granting the interpleader does not appear in
the record.  This date is taken from
Galan’s brief.

 





[8]           The
pleading does not specifically state that the court refers to the 2006
judgment; however, the finding directly preceding this finding states that
Navarro was denied a divorce in Mexico, which refers to the 2006 judgment.

 





[9]           The
Travis County court is presumably referring to Navarro’s 2006 case, as there is
no evidence in the record that the Travis County court was aware of the final
judgment issued in Galan’s 2008 case; however, the findings do not specifically
identify which case the Travis County court examined.

 





[10]
            Galan also apparently filed a notice of appeal of
the Travis County judgment to the Third Court of Appeals in Austin, Texas on
June 12, 2008 that was still pending at the time he filed his brief in August,
2008.  The record does not contain any specific information regarding that
appeal; it is only mentioned in Galan’s pleadings in the Harris County court
and in his brief on appeal.

 





[11]         We note
that the Uniform Enforcement of Foreign Judgments Act, found in Chapter 35 of
the Texas Civil Practice and Remedies Code, pertains only to courts of other
states within the United States, not courts of foreign countries.  See Tex. Civ. Prac. & Rem. Code Ann. §§ 35.001–35.008
(Vernon 2008).  Thus, as we discuss below and as the parties’ subsequent filings all
assert, Galan sought to file the Mexican divorce decree pursuant to the
provisions found in Chapter 36 of the Civil Practice and Remedies Code, which
is known as the Uniform Foreign Country Money-Judgments Recognition Act.  See Tex. Civ. Prac. & Rem. Code Ann. §§ 36.001–36.008
(Vernon 2008).  





[12]
            On March 20, 2009, the Supreme Court of the State of
San Luis Potosi, Mexico affirmed the lower Mexican court’s judgment, stating
that Galan did not voluntarily submit to the jurisdiction of the Travis County
court.  The Mexican court also stated
that the Travis County judgment had no effect on the Mexican case because
Article 121 of the Political Constitution of the United Mexican States reads,
“The laws of a State shall have effect only in its own territory and therefore
cannot be compulsory beyond its borders.”





[13]         We recognize that several courts have implied that abuse of
discretion is the correct standard of review of a trial court’s ruling on the
recognition of a foreign country judgment, but this Court has “disagree[d] with
that suggestion and point[ed] out that a trial court has no ‘discretion’ to
improperly determine the law or misapply the law to the facts.”  Reading
& Bates Constr. Co. v. Baker Energy Res. Corp., 976 S.W.2d 702, 708
(Tex. App.—Houston [1st Dist.] 1998, pet. denied).

 





[14]
            Galan
argues that Navarro did not raise the issue of the inapplicability of the
UFCMJRA to the 2008 Mexican decree in either of her motions presented to the
Harris County court and therefore failed to preserve the error for review.  Galan is incorrect.  Navarro did raise the issue of inapplicability
in both her Motion for New Trial and in her “Motion to Transfer Venue, or
Alternatively Motion to Vacate Judgment, or Alternatively, Motion to Dismiss,
or Alternatively First Amended Motion for New Trial.”





[15]         We
also note that Texas adopted the Uniform Foreign County Money-Judgments
Recognition Act (UFCMJRA) in Chapter 36 of the Civil Practice and Remedies Code
in 1981.  See Tex. Civ. Prac. &
Rem. Code Ann., Uniform Foreign Money-Judgments Recognition Act, Table of Jurisdictions Where Act Has Been
Adopted (Vernon 2008); Tex. Gov’t Code Ann. § 311.028 (Vernon 2005) (“A uniform act
included in a code shall be construed to effect its general purpose to make
uniform the law of those states that enact it.”); Unif. Foreign Money-Judgments Recognition Act 13
U.L.A. pt. 2, p. 25 (Supp. 2009).  In 2005, the Uniform Foreign-County Money
Judgments Recognition Act was revised (“2005 Uniform Act”).  Unif.
Foreign-Country Money Judgments Recognition Act § 1, 13 U.L.A. pt. 2, p. 9 (Supp. 2009).  The
purpose of the revision was:

 

not to depart from the basic rules or
approach of the 1962 Act, which have withstood well the test of time, but
rather to update the 1962 Act, to clarify its provisions, and to correct
problems created by the interpretation of the provisions of that Act by the
courts over the years since its promulgation.

 

Id. at 8.  One clarification made by the most recent
version Uniform Act was to the applicability of the foreign-country judgment,
and that version expressly provides:

 

(b) This [act] does not apply to a
foreign-country judgment, even if the judgment grants or denies recovery of a
sum of money, to the extent that the judgment is:

 

. . . .

 

(3) a judgment for divorce, support, or
maintenance, or other judgment rendered in connection with domestic relations.

 

Id. § 3.  Our readings of both Chapter
36 of the Civil Practice and Remedies and the 2005 Uniform Act draw us to the
conclusion that the UFCMJRA does not apply to a divorce decree from a foreign
country.